J-A06024-20

2021 PA Super 147

| CARLINO EAST BRANDYWINE, L.P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRANDYWINE VILLAGE ASSOCIATES, JOHN R. CROPPER, INDIVIDUALLY AND AS GENERAL PARTNER OF BRANDYWINE VILLAGE ASSOCIATION, L & R PARTNERSHIP, RICHARD J. BLAIR, INDIVIDUALLY AND AS GENERAL PARTNER OF L & R PARTNERSHIP, LEONARD G. BLAIR, INDIVIDUALLY AND AS GENERAL PARTNER OF L & R PARTNERSHIP, AND PAUL PRINCE, ESQUIRE | |
| Appellants | No. 1194 EDA 2019 |

Appeal from the Order Entered April 11, 2019
In the Court of Common Pleas of Chester County
Civil Division at No.: 2015-02938

BEFORE:  STABILE, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:                                    **FILED JULY 23, 2021**

Appellants Brandywine Village Associates ("BVA" or "Brandywine"), John

R. Cropper ("Cropper"), L&R Partnership ("L&R"), Richard J. Blair ("R. Blair"),

Leonard G. Blair ("L. Blair"), (collectively the "Brandywine Defendants") and

Paul Prince, Esquire ("Attorney Prince") (all collectively "Defendants" or

"Appellants") appeal from the April 11, 2019 order of the Court of Common

Pleas of Chester County ("trial court"), which granted Appellee Carlino East

_____

[*] Former Justice specially assigned to the Superior Court.

Brandywine, L.P.'s ("Carlino") motion to compel. In so doing, the trial court directed the Brandywine Defendants to produce documents relating to their communications with each other and Attorney Prince. Upon review, we vacate and remand for further proceedings.

## I. BACKGROUND[1]

The late Frank and Beatrice Watters owned a parcel of land located at 1279 Horseshoe Pike (State Route 322) in East Brandywine Township ("Township"), Chester County, which they subdivided into two contiguous parcels of 11.535 and 10.645 acres. The Watters conveyed the 11.535-acre parcel to BVA ("BVA Property") in June 1994 and contemporaneously entered into a 1994 Cross Easement Agreement (the "Agreement") with BVA, in which those parties granted and conveyed to each other certain cross easements to facilitate development of both parcels. In particular, the Agreement

---

[1] Although the factual and procedural history of the parties' underlying dispute is tortuous, we glean the relevant background facts from the multitude of related previous state court appeals. ***See, e.g.***, ***Brandywine Vill. Assocs. v. E. Brandywine Twp.***, No. 1477 C.D. 2018, unpublished memorandum, (Pa. Cmwlth. filed July 9, 2019); ***Carlino E. Brandywine v. Brandywine Vill. Assocs.***, 197 A.3d 1189 (Pa. Super. 2018); ***In re: Brandywine Vill. Assocs.***, No. 1409 C.D. 2017, 191 A.3d 100 (Pa. Cmwlth. filed July 2, 2018) (unpublished memorandum), ***appeal denied***, 202 A.3d 684 (Pa. 2019); ***Brandywine Vill. Assocs. v. E. Brandywine Twp. Bd. of Supervisors***, No. 1149 C.D. 2017, unpublished memorandum, (Pa. Cmwlth. filed April 19, 2018); ***Brandywine Vill. Assocs. v. E. Brandywine Twp. Bd. of Supervisors***, No. 164 C.D. 2017, unpublished memorandum, (Pa. Cmwlth. filed January 5, 2018); ***Carlino E. Brandywine v. Brandywine Vill. Assocs.***, 197 A.3d 1189 (Pa. Super. 2018); ***Carlino E. Brandywine, L.P. v. Brandywine Vill. Assocs.***, No. 2558 EDA 2013, unpublished memorandum (Pa. Super. filed October 20, 2014).

addressed, *inter alia*, (1) the construction and operation of a wastewater treatment plant, (2) the eventual availability of public sewer and its effect on the plant, (3) construction of an access drive, and (4) the construction of a stormwater retention basin.

In 1994, BVA secured Township land development approval and promptly constructed a small shopping center ("Brandywine Shopping Center") on its 11.535-acre parcel, which included a food market. The Watters, thereafter, agreed to sell the 10.645-acre parcel to Carlino ("Carlino Property"), which has remained the equitable owner pending its receipt of government approvals, including Township land development plan approval. Since 2010, Carlino has attempted to secure Township approvals to develop a Giant Food Store, a retail building, and a bank pad site on its parcel. BVA has vigorously opposed the development, which has generated continuing litigation.

### A. Complaint

On April 6, 2015, Carlino instituted the instant civil action against the Brandywine Defendants[2] and Attorney Prince, alleging causes of action for breach of contract, tortious interference with existing contractual relationship and prospective business relations, and abuse of process. Carlino filed an amended complaint on January 22, 2016. Carlino alleged that the Brandywine

---

[2] As indicated in the caption, Carlino sued: (1) BVA, (2) Cropper, in his individual capacity and as a general partner of BVA, (3) L&R as a Pennsylvania general partnership and a general partner of BVA, and (4) L. Blair and R. Blair in their individual capacities and as general partners of L&R.

Defendants breached their contractual obligation under the Agreement. Amended Complaint, 1/22/16, at ¶¶ 110-113. Carlino further alleged that the Brandywine Defendants "intended to prevent and delay the development of the proposed Carlino Shopping Center, and made the false statements and baseless objections to, *inter alia*, interfere with Carlino's existing and/or prospective contracts with Giant Food and other prospective tenants." *Id.* at ¶ 116. Furthermore, Carlino alleged with respect to the Brandywine Defendants and Attorney Prince that they engaged in abuse of process by, among other things, making false and baseless statements in courts and before the Pennsylvania Department of Environmental Protection ("DEP") with the "wrongful purpose of preventing, interfering with and delaying [Carlino's] applications to secure approval for the proposed Carlino Shopping Center." *Id.* at ¶ 125. Specifically, Carlino alleged that Appellants falsely stated:

[1. P]ublic sewer was not available for the Brandywine Shopping Center to connect to when a public sewer line was in close proximity to the Shopping Center entrance.

[2. T]he Brandywine Shopping Center could not connect to the public sewer without constructing a pump station when [Appellants] knew through their own engineer that the wastewater was conveyable by gravity to the sewer line in Brookhaven Lane.

[3.] [BVA] needed the Sewer Easement to dispose of its treated wastewater when the Authority's Solicitor had confirmed in writing that [BVA] was exempt from any such requirement and the Authority had reserved sufficient capacity to treat and dispose of the wastewater from the [BVA] Property.

[4. I]t was impossible for the [BVA] Property to be connected to public sewer because to do so would require it to uproot and dismantle its internal wastewater collection system when there was no such requirement and their own engineer conceded that

- 4 -

the Township had no such requirement and in fact, the Township never made any such requirement that [Appellants] uproot and dismantle its internal wastewater collection system.

[5. T]he Township is without authority to condemn [BVA]'s Easements for purposes of constructing the Connector Road, when as the [c]ourt previously pointed out in the 2012 decision, the Township has the authority to condemn land for construction of the Connector Road.

[6. T]he Township lacks a public purpose for condemning land for purposes of constructing the Connector Road when, as the [c]ourt previously determined, the Township has the authority to condemn land for the construction of the Connector Road.

[7.] Carlino, not the Township, desires the Connector Road when, as the Township indicated early on when the developer was [Gambone Brothers Development Co.] and later, Carlino, the Township wanted the Connector Road constructed.

[8.] Carlino's development plan must be rejected because [BVA] requires the Sewer Easement to dispose of its treated wastewater under Township zoning ordinances when the Authority Solicitor expressly exempted [BVA] from any such requirement.

[9.] [BVA] has a legitimate objection to the Connector Road when (i) [BVA] did not object to the Connector Road when Gambone included it on its development plan and (ii) [Attorney] Prince admitted at a Township meeting that the Township directed the location of the Connector Road shown on the Carlino development plan.

[10.] Carlino's development plan fails to comply with Township zoning ordinances relating to safe ingress and egress, setback and steep slope requirements when the [c]ourt previously rejected these same objections in the October 10, 2012 decision and [BVA] had not objected to the Connector Road that Gambone intended to construct in 2008.

[11. T]he [] Agreement purportedly grants [BVA] a right to obtain future easements over the Carlino Property for Appellants to use as they see fit when the [] Agreement provides no such rights.

***Id.*** at ¶ 125(a)-(k). Relatedly, Carlino averred at paragraph 47 of the amended complaint that "[Appellants], through [Attorney] Prince, sent numerous letters to the DEP raising deliberately false, baseless, and convoluted objections to the Carlino planning module." ***Id.*** at ¶ 47. Carlino also alleged that Appellants (1) "misrepresented that 'a pump station would be required" for [BVA] to pump its wastewater to the public sewer line when in fact [BVA] knew that its wastewater was conveyable by gravity and that a pump station was not necessary," ***id.*** at ¶ 49; (2) "deliberately created issues to confuse and delay the DEP from approving Carlino's planning module," ***id.*** at ¶ 50; (3) "knowingly made [multiple] false statements to the DEP," ***id.*** at ¶ 51; (4) deliberately made "false statements and baseless objections to Carlino's planning modules," and as a result, "were able to prevent Carlino for years from obtaining the necessary approval from the DEP to connect the Carlino Property to the public sewer system," ***id.*** at ¶ 52; and (5) "persisted in their refusal to connect the [BVA] Property to the Authority's sewer system in breach of their contractual obligations," ***id.*** at ¶ 54. The court and DEP actions addressed: (a) easement rights affecting Carlino's property that BVA claims to possess; (b) BVA's compliance (or lack thereof) with the terms of the Agreement; (c) BVA's objections to and appeal of Carlino's development plans; (d) purchase of the Spence property; and (e) BVA's objections to the condemnation. ***See*** Trial Court Opinion, 7/16/19, at 2.

## *B. Answer*

On February 12, 2016, Appellants filed their answer and new matter to the amended complaint. On March 21, 2016, Appellants amended their answer and new matter, repeatedly asserting that the Brandywine Defendants had relied on the advice and counsel of Attorney Prince in all underlying matters.[3] Amended Answer and New Matter, 3/21/16, at ¶¶ 47, 49, 50, 51, 52, 54 and 219. In denying allegations contained in paragraph 47, Appellants answered, among other things, that "all actions taken by BVA[,] if any[,] were taken in **good faith and in reliance on the advice of counsel**." **Id.** at ¶ 47 (emphasis added). Similarly, Appellants responded to paragraphs 49-52, stating, "Any action taken by BVA or any Defendant on BVA's behalf was taken in **good faith reliance on the advice of counsel**." **Id.** at ¶¶ 49-52, respectively (emphasis added). At paragraph 54, Appellants answered, "BVA believed **after consulting with counsel** that the Authority did not have a publicly operated sewer plant or means of conveying Brandywine sewage to a treatment facility owned by the Authority and so there was no refusal but rather a good faith determination that no such obligation existed." **Id.** at ¶ 54 (emphasis added). At paragraph 219 of their new matter, Appellants averred, "Defendant BVA and all other Defendants . . . **at all times sought the advice of counsel and acted in reliance on the advice of Attorney Prince** as counsel and in good faith and all such actions were reasonable and they were privileged to do so." **Id.** at ¶ 219 (emphasis added).

---

[3] Appellants also asserted reliance on advice of counsel in their initial February 12, 2016 answer and new matter.

Appellant Prince, as one of the answering Defendants, similarly and repeatedly responded throughout Appellants' answer that any action taken by counsel was in good faith advocacy based upon counsel's understanding of the law and application of law to the facts. Amended Answer and New Matter, 3/21/16, at ¶¶ 47, 49, 50, 51, 52, 57, 125, 127, 205, 217, and 238. For example, at paragraph 47, Appellants answered, "[T]he legal arguments . . . and the conclusions which Mr. Prince drew, are supported by the extensive references to the Township's ordinances and Authority's regulations that are contained in the letter **based on Mr. Prince's understanding of the law applied and argued in good faith**." **Id.** at ¶ 47 (emphasis added). At paragraphs 49, 50, 51, and 52, Appellants answered with identical language that "[a]ny **action taken by counsel was in good faith advocacy based on counsel's understanding of the law and application of law to the facts**." **Id.** at ¶¶ 49, 50, 51, and 52 (emphasis added). At paragraph 57, Appellants answered, "[**T**]**he documents and pleadings filed by Defendant Prince on behalf of his client were prepared and filed in good faith, on the basis of application of law to fact** in accordance with advocating on behalf of his client and were proper, lawful and privileged[.]" **Id.** ¶ 57 (emphasis added). At paragraphs 125 and 127 to Count III asserting a cause of action for abuse of process, Appellants answered similarly, "**Any positions asserted by Defendant Prince were based on Defendant Prince's understanding of the law and the good faith application of law to the facts**." **Id.** at ¶¶ 125, 127 (emphasis added).

In their new matter to the amended complaint, at paragraph 205 Appellants affirmatively stated, "BVA's counsel **believed in good faith** that a 'publicly operated sewer system' was not 'available' and therefore BVA was not required to stop use of the sewage system it built on the Watters tract. **Id.** at ¶ 205 (emphasis added). At paragraph 217 Appellants affirmatively stated, "Defendant Prince never made any intentionally or knowingly false statement and **every assertion or observation was made and based on his understanding of the information, the law and the facts and his good faith assertions** regarding the same as an advocate for his client[.]" **Id.** at ¶ 217 (emphasis added). Repeating in similar fashion what they averred in their answer, Appellants asserted at paragraph 218, "[**A**]**ll actions taken by Attorney Prince were, taken in good faith**, as an advocate for a client's reasonable position and were **and are proper, legal and privileged** under constitutional and statutory law." **Id.** at ¶ 218 (emphasis added). Finally, with specific reference to all letters, communications and/or documents issued by Defendant Attorney Prince to the Pennsylvania DEP, and/or East Brandywine Township, Appellants affirmatively asserted that all these documents and/or communications were "submitted in good faith, **within the bounds of lawful argument** in representation of his client's interests . . .." **Id.** at ¶ 238 (emphasis added).

On July 27, 2016, the trial court granted in part and denied in part Carlino's motion to strike Appellants' amended answer and new matter. On December 5, 2016, Carlino filed a reply to Appellants' amended new matter.

On December 21, 2016, Appellants filed preliminary objections in the nature of a motion to strike as untimely Carlino's reply to the new matter. In response, on January 10, 2017, Carlino filed preliminary objections to Appellants' preliminary objections. Appellants responded on January 20, 2017. On January 10, 2018, the trial court overruled Appellants' preliminary objections in the nature of a motion to strike as untimely Carlino's reply to the new matter as well as Carlino's preliminary objections to the preliminary objections.

### C. Discovery Dispute

On December 14, 2016, Carlino served upon Appellants a first set of requests for production of documents, containing 48 separate document requests for the period January 2010 until the date on which Appellants served their response. Reproduced Record (R.R.) at 944a. In the definitions accompanying these requests the terms "You" or "Your" were defined to mean any party or parties to whom the requests were directed and any party or parties providing responses, including any person or persons acting on that party's behalf or at their direction, including, without limitation all employees, agents, contractors, consultants *and counsel*. These requests expressly sought attorney-client communications and attorney work product. For example, Carlino's first document request sought:

> All documents constituting, referring or relating to all communications and documents exchanged between you and/or Defendant [Attorney] Prince concerning:
>
> a. The Carlino Property;

- 10 -

b. Carlino's plans to develop a shopping center to house a Giant Food Store;

c. The [] Agreement;

d. Carlino's 2011, 2015 and 2016 development plans for the Carlino Property;

e. Brandywine's appeals of the approvals of Carlino's development plans;

f. Carlino's planning modules;

g. Brandywine's strategies and positions in the Lawsuits docketed at Chester County 16-04843; 15-01448-ZB; 15-02398-TT; 11-05037-MJ; and 14-11237-RC;

h. All of the Honorable Ronald C. Nagle's Decisions and Orders, including without limitation, Orders dated October 10, 2012, August 15, 2013, September 3, 2014, September 22, 2015 and February 10, 2016 including, without limitation, Brandywine's compliance or lack of compliance with the Court's Orders; and

i. All opposition Brandywine has made to date to Carlino's plans to develop the Carlino Property with a shopping center to house a Giant Food Store – including without limitation, all litigation files, correspondence, emails, reports, memoranda and handwritten notes of any kind.

R.R. at 944a-45a. This request on its face sought production of attorney-client communications with Attorney Prince and included any attorney work product shared by Attorney Prince with any of the other Appellants. Carlino's 48 production requests also repeatedly sought all documents relating to Attorney Prince's investigation, comments, and responses to virtually all aspects of the subject matter of Carlino's amended complaint, regardless of whether Prince shared these documents with the other Appellants. **See** Production Requests 10, 11, 13, 15, 16, 17, 20-24, 26-28, 31, 36, and 38.

The instructions accompanying Carlino's request for production of documents provided:

> If any form of privilege or other protection from disclosure is claimed as a basis for withholding a document or for objecting to one of the following requests for production, set forth the legal basis for your claim that a document is privileged or protected from discovery and state each and every fact on which you base your claim of privilege or other protection from discovery sufficient to allow the [c]ourt to make a full determination as to the propriety of the refusal to produce the document or respond to the request. In addition, for each such document not produced under a claim of privilege or other protection from disclosure, state the following:
>
> > a. The nature of the document (*e.g.*, whether a letter, memorandum, etc.);
> >
> > b. The date of the document;
> >
> > c. The author(s) of the document;
> >
> > d. The addressee(s) or recipient(s) of the original and copy and/or blind copy of the document;
> >
> > e. The subject matter of the document; and
> >
> > f. Whether the document has been seen by or in the possession of any person other than you or your and Defendant Prince's [*sic*].

*Id.* at 942a-43a, ¶ 6.

On January 13, 2017, Appellants jointly responded and objected to the document requests and to all definitions and instructions. Although some documents were produced, Appellants refused to produce any documents concerning communications between the Brandywine Defendants and Attorney Prince based on attorney-client privilege and work product

protection. They also refused to produce internal communications between and among the Brandywine Defendants, their employees and consultants. Appellants in particular objected to producing a privilege log as instructed under the document requests. Appellants further objected to the document requests as being vague, overbroad and/or unduly burdensome.

On July 27, 2017, Carlino, without moving to compel any specific production request, filed a motion to compel Appellants to produce all attorney-client privileged and attorney work product documents relating to the subjects of the underlying litigation in response to its first set of production requests. *See* Motion to Compel, 7/27/17, Wherefore Clause, at ¶ 6. Carlino asserted in its motion that notwithstanding the fact Appellants were clearly defending this action based upon reliance on advice of counsel, they refused to produce internal communications between themselves and/or Attorney Prince on the basis of privilege and work product. *Id.* at ¶ 13. In support of its motion, Carlino also cited two deposition transcripts. The first was the deposition of Appellant L. Blair[4] relating to an antitrust action L. Blair brought against Carlino and the Township in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 16-5209). In his deposition, taken in connection with the antitrust case, L. Blair was asked why Senior Judge Ronald C. Nagle ("Judge Nagle") had characterized the Brandywine Defendants' conduct in the state court action as "obdurate and vexatious."

---

[4] As indicated earlier, L. Blair refers to Appellant Leonard G. Blair, not to be confused with Appellant Richard J. Blair (R. Blair).

*Id.* at ¶ 11 (citing Blair Deposition, 12/28/16, at 163-64). L. Blair answered that Judge Nagle was talking about Attorney Prince. *Id.* The second was the September 7, 2017 deposition of Cropper,[5] wherein he testified that he had relied upon the advice of Attorney Prince in multiple matters relating to the parties' dispute. Cropper Deposition, 9/7/17, at 45, 51-58, 74, 230-42. Carlino also argued that Appellants waived privilege protection by failing to produce "a privilege log identifying the documents they were withholding including the authors, recipients, dates, and subject matter and the basis for the withholding." *Id.* at ¶ 10. Carlino, however, did not ask the court to overrule Appellants' objections to producing a privilege log upon the terms instructed. Appellants opposed the motion to compel.

Following Judge Nagle's retirement from the bench in late 2018, Judge Edward Griffith was assigned this case. On April 11, 2019, Judge Griffith granted Carlino's motion to compel, concluding:

> The Brandywine Defendants waived attorney-client privilege and work product protection concerning all communications, whether written or oral, exchanged between themselves and/or with [Attorney] Prince regarding [Appellants'] efforts to prevent and delay the development of Carlino's property including without limitation: (a) all vested easement rights affecting Carlino's property which Brandywine claims to possess; (b) Brandywine's compliance or lack of compliance with the terms of the [] Agreement; (c) Brandywine's appeals of Carlino's development plans; and (d) Brandywine's objections to the condemnation.

---

[5] As also indicated earlier, Cropper refers to the Appellant John R. Cropper.

Trial Court Order, 4/11/19, at ¶ 2. The trial court directed Appellants to produce all requested documents within fifteen days of the entry of the order. *Id.* at ¶ 3. Appellants timely appealed. The trial court ordered Appellants to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellants complied, raising seven assertions of error by which they challenged only the grant of Carlino's motion to compel. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that Appellants are not entitled to relief.

## II. DISCUSSION

On appeal, Appellants ask us to consider five issues, which we address out of order so the issues of jurisdiction and preliminary objections may be addressed before the privilege issues:

> [I.] The trial court overruled [Appellants'] assertions of attorney-client privilege and attorney work product protection and granted Carlino's motion to compel, ordering the disclosure of documents that [Appellants] contend are privileged. Is the trial court's discovery order immediately appealable as a collateral order?
>
> [II.] In responding to the document requests at issue, [Appellants] served written objections based on the attorney-client privilege and attorney work product protection and expressly maintained those objections when Carlino moved to compel production, but [Appellants] did not serve a privilege log. Did [Appellants] properly invoke the privileges?
>
> [III.] The Brandywine Defendants have expressly represented that they are not asserting reliance upon the advice of their counsel, Prince, as an affirmative defense to liability in this case, and [Appellants] have not attempted to make affirmative use of any confidential attorney-client communication or any protected attorney work product to defend against Carlino's claims. Have [Appellants] placed the advice of counsel "in issue" and thereby

- 15 -

waived the attorney-client privilege or attorney work product protection?

[IV.] The trial court relied upon a blanket finding of privilege waiver to order the wholesale production of all documents requested by Carlino that [Appellants] contend are privileged. The trial court did not require the preparation of a privilege log, did not perform a particularized analysis as to whether any specific document is privileged or otherwise protected from disclosure, did not conduct *in camera* inspection of any disputed documents, did not engage in an issue-by-issue waiver analysis, and did not issue an order specifying which documents are protected from disclosure and which must be produced and providing its reasons for each such determination. Did the trial court commit reversible error by failing to follow those mandatory procedures?

[V.] In granting Carlino's motion to compel, the trial court expressly relied upon [its January 10, 2018] order denying [Appellants'] preliminary objections in the nature of a motion to strike Carlino's reply to new matter. Carlino filed an untimely reply to [Appellants'] new matter and failed to demonstrate good cause for the late filing. Absent the reply, the facts averred in the new matter would have been deemed admitted, and Carlino would have had no legitimate basis to enforce its document requests seeking [Appellants'] privileged documents to challenge those already-admitted facts. Did the trial court abuse its discretion by refusing to strike Carlino's untimely new matter, resulting in further error when the trial court relied on that decision in granting Carlino's motion to compel the production of privileged documents?

Appellants' Brief at 4-7 (suggested answers omitted).

### *A. Jurisdiction*

Appellants first argue that we have jurisdiction over this appeal because the trial court's April 11, 2019 order is a collateral order under Pa.R.A.P. 313(a). In support, Appellants point out that the April 11 order requires them to disclose privileged information. We agree.

As we have stated previously:

- 16 -

"[I]n general, discovery orders are not final, and are therefore unappealable." **Jones v. Faust**, 852 A.2d 1201, 1203 (Pa. Super. 2004). However, "discovery orders involving privileged material are nevertheless appealable as collateral to the principal action" pursuant to Pa.R.A.P. 313 ("Collateral Orders"). **Id.** Rule 313(a) states that "[a]n appeal may be taken as of right from a collateral order of [a] . . . lower court." Pa.R.A.P. 313(a).

> A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). "A discovery order is collateral only when it is separate and distinct from the underlying cause of action." **Feldman v. Ide**, 915 A.2d 1208, 1211 (Pa. Super. 2007).

As this Court explained recently:

> Prior to the decision of the Pennsylvania Supreme Court in **Ben v. Schwartz**, 729 A.2d 547 (Pa. 1999), Pennsylvania courts did not often entertain interlocutory appeals from discovery orders, unless the discovery order was not related in any way to the merits of the action itself. . . . In **Schwartz**, the Pennsylvania Supreme Court revised this rule and held that an appeal from a discovery order raising a question of the application of a privilege is separable from the underlying issue, so long as the issue of privilege may be addressed by an appellate court without analysis of the underlying issue. [**Id.**] at 551–52.

**Castellani v. Scranton Times, L.P.**, 916 A.2d 648, 652 (Pa. Super. 2007)*.*

**T.M. v. Elwyn, Inc.**, 950 A.2d 1050, 1056–57 (Pa. Super. 2008).

Instantly, it is undisputed that, in its April 11, 2019 order, the trial court concluded that Appellants waived attorney-client privilege and the work product doctrine with respect to communications they had with Attorney

Prince by asserting an affirmative defense of reliance on advice of counsel. Based on its determination of waiver, the trial court directed Appellants to disclose all requested communications involving Attorney Prince. Thus, the April 11 order raises a question of the application of privilege. We now determine whether the order is appealable as collateral to the principal action under Rule 313.

As mentioned, to satisfy the collateral order doctrine, an appellant must demonstrate that the order "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *Linde v. Linde*, 222 A.3d 776, 783 (Pa. Super. 2019). Importantly, the collateral order doctrine embodied in Rule 313 "must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral." *Kelly Sys., Inc. v. Leonard S. Fiore, Inc.*, 198 A.3d 1087, 1091 (Pa. Super. 2018) (quoting *Melvin v. Doe*, 836 A.2d 42, 47 (Pa. 2003) (citation omitted)), *appeal denied*, 208 A.3d 56 (Pa. 2019).

The first prong, separability, occurs when we can address the issue surrounding the disputed order without analyzing the ultimate issue in the underlying case. *Id.* We find that the issue of attorney-client privilege is separable from the underlying claims in this matter, satisfying the first prong.

- 18 -

Here, the documents are relevant to Carlino's claims, but the privilege issue can be analyzed without examining the underlying substantive merits of the subject matter of this litigation. As for the second prong, importance, "it is not sufficient that the issue be important to the particular parties." ***Geniviva v. Frisk***, 725 A.2d 1209, 1214 (Pa. 1999). Instead, the issue "must involve rights deeply rooted in public policy going beyond the particular litigation at hand." ***Id.*** The attorney-client privilege is deeply anchored in our law and has been recognized as an important right. ***See In re Thirty-Third Statewide Investigating Grand Jury***, 86 A.3d 204, 215-17 (Pa. 2014). Therefore, the second prong is satisfied. Finally, we conclude the third prong is met as well. The trial court ordered disclosure. Because disclosure of privileged documents cannot be undone, a claim of privilege is lost if review is postponed until a final judgment. ***See T.M.***, 950 A.2d at 1058. Accordingly, Appellants properly avail themselves of the collateral order doctrine as a basis for our jurisdiction to appeal from the April 11, 2019 discovery order compelling Appellants to divulge materials claimed to be privileged. ***See Ben***, ***supra*** (recognizing immediate appealability of orders requiring the divulgence of materials claimed to be privileged).

### B. Preliminary Objections

Appellants in their fifth issue challenge the trial court's January 10, 2018 order overruling their preliminary objections in the nature of a motion to strike as untimely Carlino's reply to new matter. Appellee observes, and we agree, that Appellants have waived this issue because they failed to assert it in their

- 19 -

Rule 1925(b) statement. It is black letter law in Pennsylvania that issues not included in a Rule 1925(b) statement or fairly suggested by the issue(s) stated are deemed waived. Pa.R.A.P. 1925(b)(4)(v) and (vii). Our Supreme Court will not countenance anything less than strict application of waiver pursuant to Rule 1925(b). *Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*). Failure to comply with the requirements of Rule 1925(b) will result in automatic waiver of the issues raised. Upon review of the Appellants' Rule 1925(b) statement, we cannot conclude that Appellants challenged the January 10, 2018 order. Appellants' Rule 1925(b) statement pertains only to the grant of Carlino's motion to compel and, even when construed in the most liberal light, does not in any way suggest a challenge to the January 10, 2018 order that decided preliminary objections. Accordingly, Appellants' fifth issue has not been preserved for appeal. *See* 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Appellants, however, seek to shoehorn review of the January 10, 2018 order as a part of the trial court's April 11, 2019 collateral order granting Appellee's motion to compel. Appellants argue the January 10, 2018 order must be reviewed as a part of the April 11, 2019 collateral order because the trial court included the January order as a part of its decision on the motion to compel. We disagree. As part of their response to the motion to compel, Appellants attempted to argue that Judge Nagle committed error by denying their preliminary objections seeking to strike Carlino's untimely answer to new

- 20 -

matter. In rejecting this argument raised in response to the motion to compel, the current trial judge, Judge Griffith, merely indicated that he was not addressing this issue, as Judge Nagel already dismissed and ruled upon the argument. *See* Trial Court Opinion, 7/16/19, at 17. In essence, the trial court rebuked Appellants' attempt to re-litigate their preliminary objections in the context of the motion to compel and properly deferred to a prior court ruling in this case. *See Zane v. Friends Hospital*, 836 A.2d 25, 39 (Pa. 2003) (explaining that the coordinate jurisdiction rule "provides that judges of coordinate jurisdiction should not overrule each other's decisions."). We agree, and any similar attempt now to bootstrap the ruling on preliminary objections to the collateral order presently under review necessarily fails.

Further, we would conclude the order denying preliminary objections to strike Carlino's new matter does not qualify as a collateral order subject to interlocutory review. As stated, the doctrine is implicated only when an order is separable from and collateral to the main cause of action, the right involved is too important to be denied review, and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. *See* Pa.R.A.P. 313(b). Applying that doctrine, we cannot exercise jurisdiction over Appellants' challenge to the trial court's January 10, 2018 order overruling their preliminary objections in the nature of a motion to strike as untimely Carlino's reply to new matter. Here, while the issue of striking Carlino's reply to new matter may be deemed separable from the main cause of action under the first prong, the issue principally is pertinent only to

this case and, therefore, is not one too important to be denied review to satisfy the second prong of the collateral order doctrine. Nor can Appellants establish under the third prong that a challenge to the January 10, 2018 order would be irreparably lost if immediate appellate review is not granted at this juncture. An appeal after a final order may raise the issue of whether the trial court improperly refused to strike Carlino's reply to new matter, if properly preserved. The January 10, 2018 order at present is interlocutory and, therefore, unappealable at this time.[6]

### C. Discovery Dispute

"The purpose of the discovery rules is to prevent surprise and unfairness and to allow a fair trial on the merits." **Linker v. Churnetski Transp., Inc.**, 520 A.2d 502, 503 (Pa. Super. 1987), **appeal denied**, 533 A.2d 713 (Pa. 1987). "Generally, discovery is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried." **McIlmail v. Archdiocese of Philadelphia**, 189 A.3d 1100, 1106 (Pa. Super. 2018) (citations omitted); **see** Pa.R.C.P. No. 4003.1(a) ("a party may obtain

---

[6] Without expressing any opinion on the merits of this issue, we note, as did the trial court, that under Pa.R.C.P. No. 1028(d), when preliminary objections are overruled, the objecting party shall have the right to plead over within 20 days after notice of the order or within such time as the court shall fix. The court's order did not fix the time in which Carlino had to respond. Nor did it indicate whether Appellants were required to re-plead their new matter or whether Carlino needed only to respond to those paragraphs not stricken in the existing pleading. Certainly, the preferable approach if the objections were granted would be to have the new matter re-filed so that the stricken averments are no longer a part of the record pleadings that frame the issues for trial.

discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"). "[I]n reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion." ***Sabol v. Allied Glove Corp.***, 37 A.3d 1198, 1200 (Pa. Super. 2011). "Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." ***Hutchinson v. Penske Truck Leasing Co.***, 876 A.2d 978, 984 (Pa. Super. 2005), ***aff'd***, 922 A.2d 890 (Pa. 2007).

Initially, we find it necessary to define the scope of Carlino's motion to compel because Carlino did not move to compel specific document requests. Rather, Carlino moved broadly to compel production of all attorney-client communications and attorney work product identified throughout its requests. In both its motion to compel and memorandum in support thereof, Carlino requested that the trial court rule that Appellants waived attorney-client privilege and, therefore, must produce all prior privileged and work product-protected documents relating to the subjects of the underlying litigation. ***See*** Motion to Compel, 7/26/17, at 6; Memorandum in Support of Motion to Compel, 7/26/17, at 16. We do not construe the motion to include production of Attorney Prince's work product that he did not share with the other Appellants. In support, we observe that Carlino, citing its request for production numbers 2 through 41, represented that it requested Defendants to produce documents relating to all germane topics on which the Brandywine

- 23 -

Defendants internally communicated *and communicated with Prince*. **See** Memorandum of Law in Support of Motion to Compel, 7/26/17, at 6. The fact the motion did not seek production of work product not shared by Attorney Prince with the other Appellants is confirmed in Carlino's factual summary wherein it stated that there was "no question that the Brandywine Defendants invoked the affirmative defense of reliance upon counsel in defense of this lawsuit . . . Carlino is therefore entitled to obtain all of the so-called privileged and work product documents to determine the extent and reasonableness of this defense [reliance on advice of counsel]." **Id.** at 8. With specific regard to compelling discovery of work product, Carlino again argued that since Brandywine was defending the lawsuit on the basis it relied on the *advice of counsel*, Attorney Prince's work product was directly relevant to that defense and, therefore, Carlino was entitled to obtain all documents in response to those requests. **Id.** at 15. Our conclusion regarding the scope of Carlino's motion to compel also is confirmed by the trial court's order being appealed. Judge Griffith's April 11, 2019 order granting the motion to compel did not order production of attorney work product not shared with Appellants. The order only compelled disclosure of documents exchanged between Attorney Prince and the other Appellants. **See** Trial Court Order, 4/11/19, at 2 (Brandywine Defendants waived attorney-client privilege and work product protection concerning all communications, whether written or oral, exchanged between themselves and/or with Prince). We shall proceed to examine the waiver issues raised herein accordingly.

1.  Invocation of the Privileges[7]

Appellants assert in their second issue that the trial court erred when it stated Appellants did not properly invoke the privileges, because they did not produce a privilege log. Appellants' Brief at 26. In effect, this statement by the trial court reflects its belief that Appellants did not satisfy their burden of proof to assert the privileges when they failed to produce a privilege log identifying those documents that Appellants seek to protect from disclosure.

The party asserting privilege bears the burden of producing facts establishing proper invocation of the privilege. **Yocabet v. UPMC Presbyterian**, 119 A.3d 1012, 1019 (Pa. Super. 2015). "Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies." **Id.** "Accordingly, if the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." **Custom**

---

[7] Appellants have asserted both attorney-client privilege and the work product doctrine, but refer to both as privileges. The work product doctrine is not a privilege, but rather a rule embodied in Pa.R.C.P. No. 4003.3. It is not uncommon, however, to see the doctrine also referred to as a privilege. *See* **Gillard v. AIG Insurance Company,** 15 A.3d 44, 55 n.16 (Pa. 2011); **Gocial v. Independence Blue Shield,** 827 A.2d 1216, 1222 (Pa. Super. 2003) (referring to both the work-product doctrine and the work-product privilege). For convenience, our reference to "privileges" herein shall refer to both the attorney-client privilege and the work product doctrine.

***Designs & Mfg. Co. v. Sherwin-Williams Co.***, 39 A.3d 372, 376 (Pa. Super. 2012) (citation and alteration omitted); ***see also Red Vision Sys., Inc. v. Nat'l Real Estate Info. Serv., L.P.***, 108 A.3d 54, 62 (Pa. Super. 2015). A privilege log provides an acceptable format to identify documents, the applicable privilege, and the basis upon which privilege is claimed.[8] While it is true our rules do not *per se* require the production of a privilege log when asserting a privilege as the basis for objecting to discovery requests, ***see*** Pa.R.C.P. Nos. 4006 and 4009.12, respectively, a responding party nonetheless must state objections in a manner that meets our rule requirements. Rule 4009.12(b)(2) requires that responses to document requests be in a paragraph-by-paragraph response which *shall* identify all documents or things not produced or made available when because of the objection they are not within the scope of permissible discovery. Pa.R.C.P. No. 4009.12(b)(2). The rule further provides that documents or things not produced shall be identified with reasonable particularity together with the basis for non-production. ***Id.***[9] Production of a privilege log is the most practical way to satisfy our rule requirements.

---

[8] In fact, it now is customary for a requesting party to include written instructions with a discovery request to produce a privilege log when claims of privilege are asserted as a basis for objection. ***See Meyer-Chatfield Corp. v. Bank Financial Services Group et al.***, 143 A.3d 930, 937-38 (Pa. Super. 2016).

[9] Certainly, this part of Rule 4009.12(b)(2) encompasses as acceptable a response setting forth a privilege log, but it nonetheless does not require the production of one *per se*.

Instantly, Carlino served a request for production of documents upon all Defendants consisting of 48 separate production requests preceded by seven pages of definitions and three pages of instructions. Within the instructions, Carlino requested that if any form of privilege is claimed as a basis for withholding a document, the defendant should set forth the legal basis for the claim of privilege. The answering defendant then was to identify each and every fact upon which the claim of privilege is based to allow the court to make a determination as to the propriety of the refusal to produce the document. Carlino additionally instructed that for each such document not produced under a claim of privilege, the defendant was to state "a. the nature of the document…; b. the date of the document; c. the author(s) of the document; d. the addressee(s) or recipient(s) of the original and copy and/or blind copy of the document; e. the subject matter of the document; and f. whether the document has been seen by or in the possession of any person other than you or your and Defendant Prince's [sic]." Carlino's Request for Production of Documents, 12/14/16, at 8-9, ¶ 6. In response, Appellants collectively asserted six pages of general objections to the requests and seven more pages of objections to the definitions of terms and instructions before lodging specific objections to each document request that spanned another 56 pages. Appellants' Objections and Responses to Request for Production, 1/13/17. In particular, and by way of example, with respect to document production request no. 1 (requesting all attorney-client communications), Appellants incorporated their general objections and their objections to the

terms and instructions before setting forth another two pages of specific objections to the request that, *inter alia*, objected even to answering the request.[10]  Pertinent to this appeal, within these objections Appellants asserted the privileges against document production.  Carlino moved to compel production of these documents, but did not specifically move to overrule the plethora of objections asserted by Appellants to Carlino's definitions and instructions, including those refusing to provide an answer to the request, to produce a privilege log, or to describe the retained documents as required under Rule 4009.12(b)(2).  Instead, Carlino only asserted that the privileges were waived based upon Appellants' responsive pleadings, some deposition testimony, and their failure to produce a privilege log.  When this discovery dispute presented to the trial court, its posture was such that the trial court had to determine whether Carlino was entitled to privileged documents based upon waiver found in Appellants' pleadings and the proffered deposition testimony.  Because Carlino did not ask the trial court to overrule any of Appellants' specific objections to Carlino's definitions or instructions, including objections to producing a privilege log as requested, it was error for the trial court to hold that the failure to produce a privilege log resulted in

_____

[10] Regrettably, today discovery requests have evolved into an art form whereby a requesting party feels the need to draft airtight requests that cover every conceivable person, entity and piece of discovery, while a responding party in turn drafts responses in a manner that makes use of every possible device to object to discovery.  Discipline at the trial court level against these extreme practices may bring discovery practice back into the realm intended under our rules.

waiver to assert the privileges. ***See McGovern v. Hosp. Serv. Ass'n of Northeastern Pennsylvania***, 785 A.2d 1012 (Pa. Super. 2001) (waiver of attorney-client privilege for failure to respond to discovery within 30 days too harsh a sanction. At the least, an *in camera* inspection should have occurred). Appellants possessed the right to lodge objections to the discovery requests, ***see*** Pa.R.C.P. No. 4009.12(b)(4) and 4019(a)(2), including to producing the privilege log as requested, but it was incumbent upon Carlino to test the sufficiency of those objections by filing an appropriate motion. ***See*** Pa.R.C.P. 4019(a) (the court, on motion, may make an appropriate order if a party fails to make discovery). As stated, Carlino's motion to compel was limited in scope and did not seek to overrule Appellant's objections to answering the production request on grounds other than privilege.[11] It, therefore, was error for the trial court to hold Appellants waived the privileges by not producing a privilege log, when Appellants objected to this request under the terms a privilege log was requested.

Nonetheless, while the failure to produce a privilege log *per se* was not a proper basis for the trial court to find waiver of the privileges, the trial court did appropriately proceed to examine whether privileges were waived based upon Carlino's submission of Appellants' pleadings and proffered deposition testimony. As stated, Appellants had the burden of proof to establish that the

---

[11] Nor did Appellants before the trial court or now on appeal before this Court challenge the trial court's ruling under any of the many additional objections they asserted other than as stated in their issues raised in this appeal.

privileges applied. Regardless of their decision not to respond by producing a privilege log, Appellants did respond by asserting that documents evidencing communications between Attorney Prince and the other Appellants were privileged. This responded directly to Carlino's request, *i.e.*, the production of documents between attorney and clients. Given the unambiguous nature of Carlino's request for attorney-client communications, it cannot be said under these narrow facts that Appellants did not meet their initial burden of asserting the privileges. ***See Farrell v. Regola***, 150 A.3d 87, 95 (Pa. Super. 2016) (*in camera* review not necessary where requests so clearly on their face invoked privilege), ***appeal denied***, 168 A.3d 1259 (Pa. 2017). The request on its face broadly asked for attorney-client communications making it unnecessary to identify protected documents at that time. Against this initial volley of privilege, the burden shifted to Carlino to demonstrate why the privileges were waived to allow disclosure. Carlino met this shifting burden by pointing to some brief deposition testimony and Appellants' pleadings as outlined above, wherein Appellants expressly asserted reliance upon advice of counsel and Attorney Prince's reliance upon law. The issue of privileges was properly before the trial court.

## 2. Appellants' Assertion of Non-Waiver of the Privileges

Appellants' third issue assigns error to the trial court's ruling that compels disclosure of privileged documents. Appellants argue that despite their pleadings, they are not asserting reliance on advice of counsel as an affirmative defense to liability, nor have they attempted to make use of

confidential attorney-client communications or any protected attorney work product to defend against Carlino's claims. As such, they contend there can be no waiver of any privileges.

At the outset, we observe that while Appellants' third claim takes issue with the finding that both attorney-client communications and attorney work product protections were waived, Appellants' brief speaks largely to considerations attendant to waiver of the attorney-client privilege and appears to subsume within that argument waiver of attorney work product protection. **See** Appellants' Brief at 29-42. Waiver considerations with respect to each of these privileges are not the same. As our Supreme Court explained in **BouSamra v. Excela Health**, 210 A.3d 967, 978 (Pa. 2019), because the purposes of the attorney-client privilege and the work product doctrine are different, the waiver analysis for each rule necessarily diverges as well. The purpose of the attorney-client privilege is to protect confidential communications between counsel and their clients, whereas work product protection is designed to protect against disclosure of the mental impressions and processes of an attorney acting on behalf of a client.[12] **Id.** Whereas disclosure to a third party generally waives the attorney-client privilege, the same cannot be said for application of the work product doctrine because disclosure does not always undermine its purpose. **Id.** As the purpose of the doctrine must drive the waiver analysis, the work product doctrine is waived

---

[12] This is so regardless of whether the material was prepared in anticipation of litigation. **BouSamra,** 210 A.3d at 976.

when the work product is shared with an adversary, or disclosed in a manner that significantly increases the likelihood that an adversary or anticipated adversary will obtain it. *Id.* Therefore, while it is possible for the attorney-client privilege to be waived when a confidential communication is disclosed outside the attorney-client relationship, the failure to maintain strict confidentiality over work product will not result in a similar waiver if work product is disclosed in a manner not likely to reach an adversary. While the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, this should not suffice by itself to establish waiver of the work product privilege. *Id.*

Returning to the merits, we observe, as did the trial court, that Appellants invoked the defense of reliance on advice of counsel repeatedly "in their amended answer when Carlino asserted that the Brandywine Defendants and Attorney Prince had committed abuse of process by taking false positions in previous actions concerning various easements, the cross easement agreement, objections to and appeal of Carlino's development plans, the condemnation and the proceedings involving the [DEP]." Trial Court Opinion, 7/16/19, at 15-16. The Brandywine Defendants also invoked advice of counsel as a defense in new matter. *Id.* at 16. Despite Appellants' pleadings, they assert privileges were not waived, since they have not attempted to make affirmative use of any attorney-client communications or any protected attorney work product to defend against Carlino's claims. We disagree.

The principal purpose of pleadings is to frame, present, define, and narrow the issues to be tried. ***See*** Pa.R.C.P. No. 1019(a) (prescribing, for purposes of pleadings in civil actions generally, that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form."); ***see also Santiago v. Pennsylvania Nat'l Mut. Cas. Ins. Co.***, 613 A.2d 1235, 1238 (Pa. Super. 1992) (under the Pennsylvania system of fact pleading, the pleader must define the issues). Thus, when a party pleads certain defenses, it is understood that the party intends to rely upon those defenses at trial. Based on the plain language of Appellants' amended answer and new matter, we conclude that Appellants indeed raised the affirmative defenses of reliance on advice of counsel and counsel's good faith reliance on applicable law to Carlino's causes of action. ***See*** Amended Answer and New Matter, 3/21/16, at ¶¶ 47, 49-52, 54, 56-57, 61, 70, 125, 127, 133-34, 205, 217-219, and 233. Appellants by doing so have opened the door to waiver of the privileges. The extent of these waivers, however, is dependent upon what Appellants have placed in-issue. ***See infra*** (II.C.3).

We find Appellants' reliance on ***Commonwealth v. Harris***, 32 A.3d 243 (Pa. 2011), for the proposition that before waiver can be found both reliance and *actual* use of privileged material must be present, to be incorrect. Appellants appear to attempt to use this authority to argue that while they can plead and place waiver of privileges at issue in their pleadings, waiver cannot be found until they actually intend to use privileged material. Contrary to Appellants' assertion, the Pennsylvania Supreme Court in ***Harris*** did not

expressly adopt a "privilege-waiver test" as set forth in ***Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.***, 32 F.3d 851 (3d Cir. 1994). The Court in ***Harris*** merely cited ***Rhone*** as persuasive authority for the proposition that in-issue waiver occurs when a privilege holder asserts a claim or defense, and then attempts to prove that claim or defense by reference to otherwise privileged material. ***Harris***, 32 A.3d at 253. In no manner did the Court set forth a rule that would allow litigants to vary their proofs from the issues or defenses as set forth in their pleadings. In ***Harris***, the appellant in a post-conviction relief act ("PCRA") proceeding alleged ineffectiveness of counsel for failure to attack the adequacy of the trial testimony of his psychology expert, a Dr. Berger. Although the appellant decided not to call Dr. Berger as a part of his case in the PCRA proceedings, the Commonwealth moved to call Dr. Berger as both an expert and fact witness. If permitted to do so, it was the Commonwealth's position that any attorney-client or psychologist-patient privilege with appellant had already been waived. The Court was called upon to decide whether the appellant created a limited waiver of his attorney-client and psychologist-patient privileges. The Court ultimately held that the prosecution could require Dr. Berger to testify only as a fact witness about his evaluation of appellant and only insofar as appellant waived any privilege by his actions. Any suggestion that a privilege waiver occurs only once information is actually used was clearly dispelled in the Court's decision wherein it found unconvincing appellant's argument that he did not place Dr. Berger's performance in issue, *as two of his claims in his PCRA petition* hinged

on an allegation that Dr. Berger's performance was inadequate. *Id.* The Court clearly looked to see how the appellant framed his issues within his petition to determine the extent of the in-issue waiver. Were we to accept Appellants' argument, pleadings meant to frame claims and defenses for trial would be rendered meaningless.

Nor do we find Appellants' citation to ***Glenmede Trust Co. v. Thompson***, 56 F.3d 476 (3d Cir. 1995),[13] supportive of their argument that before privilege waiver may be found, actual use of privileged materials must be present. In ***Glenmede***, the Third Circuit stated, "The attorney-client privilege may be waived by a client **who asserts reliance on the advice of counsel as an affirmative defense**." *Id.* at 486 (emphasis added). Disclosure was ordered in that case based upon advice of counsel being placed at issue. Prior to arguing the extent of the waiver of attorney-client privilege, the law firm objecting to disclosure had previously voluntarily produced and disclosed an opinion letter of counsel. The issue in ***Glenmede*** then centered upon the extent of waiver based upon this voluntary disclosure. The Third Circuit's holding that privilege may be waived by a client who asserts reliance as an affirmative defense was not dependent upon the opinion letter of counsel first being disclosed. The opinion letter simply defined the extent of the waiver.

---

[13] "We are not bound by decisions of the federal courts, but we may rely on them for persuasive authority." ***McEwing v. Lititz Mut. Ins. Co.***, 77 A.3d 639, 648 n.7 (Pa. Super. 2013).

Having concluded that Appellants through their pleadings invoked the affirmative defense of reliance on advice of counsel, we now address Appellants' last claim: whether the trial court erred in finding a blanket privilege waiver and ordering the wholesale production of documents that otherwise would be privileged.[14]

### 3. Scope of Waiver

The attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law. ***Nationwide Mut. Ins. Co. v. Fleming***, 924 A.2d 1259, 1263 (Pa. Super. 2007), ***aff'd on other grounds by an equally divided court***, 992 A.2d 65 (Pa. 2010). The attorney-client privilege often is considered ***the most revered*** of privileges. ***Pittsburgh History & Landmarks Found. v. Ziegler***, 200 A.3d 58, 80 (Pa. 2019). Pennsylvania law also protects an attorney's work product from compelled disclosure. This protection promotes our adversarial system "by enabling attorneys to prepare cases without fear that their work product will be used against their clients." ***Commonwealth v. Flor***, 136 A.3d 150, (Pa. 2016) (citing ***Commonwealth v. Kennedy***, 876 A.2d 939 (Pa. 2005)). Our Supreme Court has characterized the work product doctrine as "one of the most fundamental tenets of our system of

---

[14] The application of the attorney-client privilege and the work product doctrine are questions of law over which our standard of review is *de novo* and our scope of review is plenary. ***BouSamra***, 210 A.3d at 973.

jurisprudence." ***Kennedy*** (citing ***Commonwealth v. Dennis***, 859 A.2d 1270, 1278 (Pa. 2004)).

Appellants contend the trial court committed error in finding a blanket waiver of privileges to order the wholesale production of attorney-client communications and work product documents. They claim the trial court further erred by not requiring the preparation of a privilege log[15] and without performing a particularized analysis as to whether any specific document was privileged or otherwise protected from disclosure through an *in camera* inspection of any disputed documents.

The trial court found that there was no question Appellants were affirmatively defending Carlino's suit on the basis of reliance on the advice of counsel. Trial Court Opinion, 7/16/19, at 15. The trial court ordered disclosure of attorney-client documents reasoning,

> [b]ased on principles of fairness, Carlino is entitled to obtain all of Defendants' documents relating to the subject matters of the underlying litigations to determine, for example, what information the Brandywine Defendants provided to counsel, the extent of counsel's advice, whether such advice was well-informed, and whether the Brandywine Defendants reasonably relied on their counsel's advice. The advice put in issue by the Brandywine Defendants is broad and spans multiple litigations. Litigation between these parties has spanned nearly a decade. The relevant advice from counsel addresses, inter alia, jurisdictional choices, what representations to make to courts and agencies, what claims

---

[15] By assigning error to the trial court that it did not order production of a privilege log, we assume Appellants do not mean to contradict their objections to producing one under Carlino's requests. Rather, we assume Appellants' objections to producing a privilege log under Carlino's requests was based upon the terms directed under the requests' instructions.

to pursue, and what orders to appeal. The order on appeal permits Carlino to obtain discovery regarding matters directly relevant to the subject matter involved.

*Id.* at 16. Similarly, the trial court, citing **T.M.**, **supra**, ordered disclosure of Attorney Prince's work product relied upon by Appellants, concluding that the work product privilege is not absolute and items may be deemed discoverable if the "product" sought becomes a relevant issue in the action. The trial court stated:

> Because the Brandywine Defendants are defending this lawsuit on the basis that they relied on advice of counsel, Attorney Prince's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research or legal theories are directly relevant to that defense and Carlino [is] entitled to obtain all such documents in response to the request for documents. **Glenmede Trust Co.**, 56 F.3d at 486. Once privileged documents are produced, as a result of waiver of attorney-client privilege, there is no reason to withhold the related work product. **Id**.

Trial Court Opinion, 7/16/19, at 17.

At the outset, we find the trial court's statement that "[o]nce privileged documents are produced, as a result of waiver of attorney-client privilege, there is no reason to withhold the related work product" to be in error. While the attorney-client privilege belongs to the client, work product protection belongs to counsel. **See BouSamra**, 210 A.3d at 975 (noting that "unlike the attorney-client privilege, the protection flowing from the work product doctrine belongs to the attorney, not the client."). While strict confidentiality is required to maintain the attorney-client privilege, the same is not true for work product. Counsel may disclose work product to his client or to other

non-adversary third parties without losing the protection of work product. It is only when work product is shared with an adversary or disclosed in a manner that significantly increases the likelihood that an adversary or anticipated adversary will obtain it that counsel loses work product protection. *Id.* at 978. The trial court therefore misspoke when it assumed waiver of attorney-client privilege would also waive attorney work product protection. Waiver of attorney-client communications and attorney work product must be examined separately.

When claims or defenses asserted in an action have placed discovery of privileged materials at issue, our courts have never endorsed a blanket disclosure of all documents, even when disclosure has been ordered as a sanction. **McGovern**, **supra**. Disclosure of privileged documents has been particularized.

In **McGovern**, the appellants failed to file timely responses to discovery requests within 30 days. The appellees contended that the failure to do so resulted in waiver of all objections, including any objections asserting privilege. The trial court agreed and ordered full disclosure of all documents. The issue at bar was whether the failure to file objections within thirty days after being served interrogatories and requests for documents resulted in a waiver of all objections. The appellants argued that instead of ordering a *carte blanche* turnover of all requested documents and requested information, including privileged material, the court instead should have considered and focused on a variety of factors, including whether any prejudice could be

cured. We agreed partially upon the basis that one of the reasons the approach was advisable is because the materials sought were protected by the attorney-client relationship. While it remained to be seen if indeed the underlying materials fell under the protection of the attorney-client privilege, we held that the trial court, at the very least, must conduct an *in camera* inspection of the documents to determine this contention. **McGovern**, 785 A.2d at 1018. We concluded we were unaware of any case law that suggests a trial court may order the discovery of privileged material as a sanction, let alone without any balancing. **Id.** at 1019.

In a concurring opinion in **Flor**, **supra**, then-Chief Justice Saylor considered that a PCRA court's order mandating PCRA counsel to produce the entirety of the trial counsel's file may have been due to a belief that the file had to be either protected or divulged as a unit. **Flor**, 136 A.3d at 161. The Chief Justice then offered:

> As a supervisory matter, moreover, it seems appropriate for this Court to supply guidance on the topic for purposes of further proceedings on remand.
>
> Because of the possibility that materials may be withheld relative to which a reasonable argument could be made that they should be divulged, one possibility is for the common pleas court to require PCRA counsel to produce a privilege log referencing such items. This would have multiple benefits. First, it would give the Commonwealth an indication of the nature of materials which PCRA counsel has elected not to disclose and, accordingly, afford it an opportunity to contest the withholding of specific documents.
>
> Any dispute along these lines could then be submitted to the court for resolution following *in camera* review. Finally, the creation of such a log would facilitate appellate review should that become necessary.

*Id.* at 161-62 (citations omitted).

Here, Appellants ask us to determine whether the trial court erred in concluding that they waived attorney-client privilege broadly by invoking the defense of reliance on advice of counsel to Carlino's claims. We conclude that while the trial court was correct in finding waiver, it erred by ordering blanket disclosure of privileged documents.

The scope of waiver of privileged material must be determined by the extent to which the privileged material has been placed in issue. Because privilege waivers do not waive the attorney-client privilege or work product doctrine as to all material counsel may possess, our precedent requires an issue-specific analysis of waiver. *See Flor*, 136 A.3d at 159 (citing *Harris*, 32 A.3d at 252 (holding that when a PCRA petitioner challenges counsel's effectiveness in a post-conviction petition, he has waived his privileges only to the extent that he "puts the privileged materials in issue[.]"), and *Commonwealth v. Chmiel*, 738 A.2d 406, 424 (Pa. 1999) (holding that "an attorney may not respond to allegations of ineffectiveness by disclosing client confidences unrelated to such allegations").[16] Accordingly, the breadth of the privileges waivers called into question here and the trial court's order for

---

[16] *Flor*, *Harris*, and *Chmiel* are cases discussing waiver of privilege in the context of PCRA proceedings. The PCRA statute expressly provides that when a claim for relief is based on allegations of ineffective assistance of counsel, any privilege concerning counsel's representation as to that issue is automatically terminated. 42 Pa.C.S.A. § 9545(d)(3). We do not view this statutory provision as exclusive to PCRA proceedings, but rather interpret the provision as codifying our law with respect to the scope of in-issue waivers.

disclosure must be examined against the claims that place these privileged materials in issue.

a. Attorney-Client Communication Waivers

Carlino has asserted three causes of action in its amended complaint; Count I-breach of contract, Count II-interference with existing contractual relationships and prospective business relations, and Count III-abuse of process. Appellants in defense throughout their amended answer and in new matter have pled reliance on advice of counsel. As noted by the trial court, the matters to which these claims relate span more than a decade of litigation between these parties. Consistent with our holdings herein, Carlino is entitled to discovery of those relevant and privileged documents that Appellants have placed in issue as a result of Appellants' assertion of reliance on advice of counsel as pled in their answer and new matter. As we have emphasized, however, disclosure must be particularized and cannot be compelled in a wholesale manner. We therefore find it necessary to remand this matter to the trial court so that Appellants first can identify, under a useful privilege log, all documents responsive to each of Carlino's document requests that seek attorney-client privileged materials that have been placed in issue based upon Appellants' assertion that they have relied upon advice of counsel. The trial court may then conduct an *in camera* inspection of documents claimed to be privileged and not waived, if, for instance, privileged documents exist outside of the claimed defenses asserted by Appellants both in their pleadings and in discovery.

b. Attorney Work Product

It is settled that "[t]he purpose of the work product doctrine is to protect [from the knowledge of opposing counsel and his or her client] the mental impressions and processes of an attorney acting on behalf of a client, regardless of whether the work product was prepared in anticipation of litigation." ***BouSamra***, 210 A.3d at 976, 979 (citations omitted); ***see Birth Ctr. v. St. Paul Companies, Inc.***, 727 A.2d 1144, 1165 (Pa. Super. 1999) (noting that "[t]he protection against the discovery of work product is designed to shelter the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case."), ***aff'd***, 787 A.2d 376 (Pa. 2001); ***disapproved on other grounds by Mishoe v. Erie Ins. Co.***, 824 A.2d 1153 (Pa. 2003).  The protection promotes our adversarial system by providing a privileged area within which attorneys can analyze and prepare cases "without fear that their work product will be used against their clients." ***BouSamra***, 210 A.3d at 976-77; ***accord Bagwell v. Pennsylvania Dep't of Educ.***, 103 A.3d 409, 415-16 (Pa. Cmwlth. 2014), ***appeal denied***, 117 A.3d 1282 (Pa. 2015) (quoting ***Commonwealth v. Sandusky***, 70 A.3d 886, 898 (Pa. Super. 2013), ***appeal denied***, 81 A.3d 77 (Pa. 2013)); ***Brown v. Greyhound Lines, Inc.***, 142 A.3d 1, 9 (Pa. Super. 2016) (citation omitted).  The work product protection belongs to the attorney not the client. ***See BouSamra***, 210 A.3d at 975 (noting that "unlike the attorney-client privilege, the protection flowing from the work product doctrine belongs to the attorney, not the client.").

The work product doctrine is codified in Pennsylvania Rule of Civil Procedure 4003.3, which provides:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. ***The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories***. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. No. 4003.3 (emphasis added). The plain language of Rule 4003.3 provides that work product protection applies to a party's attorney and other representative or agent. With respect to the attorney, the Rule provides that "discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. No. 4003.3.

The work product doctrine, however, can be waived. "[T]he work-product privilege is not absolute and items may be deemed discoverable if the 'product' sought becomes a relevant issue in the action." ***Gocial***, 827 A.2d at 1222.

The explanatory comment accompanying Rule 4003.3 provides:

> The amended Rule radically changes the prior practice as to discovery of documents, reports and tangible things prepared in anticipation of litigation or for trial by or for another party or by

or for that party's representative, including his attorney, consultant, surety, indemnitor, insurer or agent.

Former Rule 4011(d) expressly prohibited such discovery. The amended Rule permits it, subject to the limitation that discovery of the work product of an attorney may not include disclosure of the mental impressions, conclusions, opinions, memoranda, notes, legal research or legal theories of an attorney. As to any other representative of a party, it protects the representative's disclosure of his mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics. Memoranda or notes made by the representative are not protected.

The essential purpose of the Rule is to keep the files of counsel free from examination by the opponent, insofar as they do not include written statements of witnesses, documents or property which belong to the client or third parties, or other matter which is not encompassed in the broad category of the "work product" of the lawyer. ***Documents, otherwise subject to discovery, cannot be immunized by depositing them in the lawyer's file***. The Rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more.

***There are, however, situations under the Rule where the legal opinion of an attorney becomes a relevant issue in an action; for example, an action for malicious prosecution or abuse of process where the defense is based on a good faith reliance on a legal opinion of counsel***. ***The opinion becomes a relevant piece of evidence for the defendant, upon which defendant will rely***. ***The opinion, even though it may have been sought in anticipation of possible future litigation, is not protected against discovery***. ***A defendant may not base his defense upon an opinion of counsel and at the same time claim that it is immune from pre-trial disclosure to the plaintiff.***

Pa.R.C.P. No. 4003.3, *cmt.* (emphasis added).[17]  As the comment makes clear,

documents ordinarily protected by the attorney work-product doctrine may be

discoverable if the work product itself is relevant to the underlying action.  The

work-product privilege contained within Rule 4003.3 cannot be overcome,

however, by merely asserting that the protected documents reference

relevant subject matter.   Rather, to overcome the work-product privilege,

either an attorney's mental impressions, conclusions, opinions, memoranda,

notes, summaries, legal research, or legal theories must be directly relevant

to the action, i.e. in issue.  ***Barrick v. Holy Spirit Hospital of the Sisters***

***of Christian Charity***, 32 A.3d 800, 811–812 (Pa. Super. 2011) (quotation

marks omitted), ***aff'd***, 91 A.3d 680 (Pa. 2014).

Here, we are tasked with determining whether waiver of work product

protection occurred when Appellants asserted reliance on advice of counsel as

a defense in jointly answering Carlino's amended complaint.  In their amended

answer, Appellants, including Attorney Prince, stated that "[a]ny positions

asserted by Attorney Prince were based on [his] understanding of the law and

---

[17] Our Supreme Court has cautioned that explanatory comments are non-binding "since [they] have not been officially adopted or promulgated by this Court, nor do they constitute part of the rule.  However, they indicate the spirit and motivation behind the drafting of the rule, and they serve as guidelines for understanding the purpose for which the rule was drafted." ***In Re Estate of Plance***, 175 A.3d 249, 270 n.13 (Pa. 2017) (citing ***Laudenberger v. Port Auth. of Allegheny Cty.***, 436 A.2d 147, 151 (Pa. 1981)); ***accord Johnson v. Bullock-Freeman***, 61 A.3d 272, 276 (Pa. Super. 2013).   Accordingly, we find instructive and persuasive the explanatory comments accompanying rules of civil procedure.

the good faith application of law to the facts." Amended Answer and New Matter, 3/21/16, at ¶ 125. Because work product protection belongs to counsel, the proper inquiry on waiver does not focus upon information relied upon by the clients. Rather, the inquiry as to whether work product protection has been waived must look to counsel's actions and the manner in which counsel shared his work product. The issue before the trial court and, hence, this Court, is whether Appellants' advice of counsel defense also results in a waiver of attorney work product protection. We hold that it does not, and it was error for the trial court to conclude as much. This is because, as stated, only counsel may waive work product protection by, for instance, placing work product in issue, or disclosing it in a manner likely to reach adversarial parties. It may well be that Attorney Prince has waived work product protection by the defenses asserted in Appellants' jointly produced answer and new matter, but that issue is not presently before this Court.[18]

### III. CONCLUSION

In sum, we conclude that (1) we have jurisdiction to consider the privileges issues raised in this appeal; (2) we do not have jurisdiction to consider Appellants' challenge to the denial of their preliminary objections to strike Carlino's reply to new matter; (3) Appellants have properly invoked the privileges to Carlino's document requests; (4) Appellants have waived

---

[18] We do not herein offer any opinion on the fact or scope of any waiver of work product protection by Attorney Prince in deciding the in-issue waiver related to the reliance upon the advice of counsel defense raised in this appeal.

- 47 -

attorney-client privilege to all communications relevant to their defense that they have relied upon advice of counsel; (5) the trial court erred in ordering blanket production of privileged materials; and (6) the trial court erred in ordering production of attorney work product material. We further remand for the trial court to direct that Appellants produce a useful privilege log identifying all attorney-client communications responsive to those communications requested throughout Carlino's document production requests. Upon receipt of that log, the trial court may conduct an *in* camera inspection, if necessary.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2021