J-A17019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HANNAH LAHR, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ANNALISE MEDINA-DIAZ, DECEASED | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| LEHIGH VALLEY HOSPITAL, INC., LEHIGH VALLEY PHYSICIANS GROUP, LAURA A. YOUNG, M.D. AND MOLLY S. PETERS, M.D. | : : : : : : | No. 2802 EDA 2022 |
| Appellants | : | |

Appeal from the Order Entered October 3, 2022
In the Court of Common Pleas of Lehigh County
Civil Division at No(s):  2021-C-0010

BEFORE:   KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED DECEMBER 15, 2023**

Lehigh Valley Hospital, Inc. ("LVH"),[1] Lehigh Valley Physicians Group ("Group"), Laura A. Young, M.D. ("Dr. Young"), and Molly S. Peters, M.D. ("Dr. Peters") (collectively, "Appellants") appeal from the discovery order compelling disclosure of three patient safety reports[2] related to Hannah Lahr

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] LVH is responsible for a network of hospitals, including hospitals in Muhlenberg ("LVH-Muhlenberg") and Cedar Crest ("LVH-Cedar Crest").  Some of the documents in the record refer to the Lehigh Valley Hospital Network.

[2] The discovery order is immediately appealable pursuant to the collateral order doctrine.  **See** Pa.R.A.P. 313; **Ford-Bey v. Professional Anesthesia Services**, 302 A.3d 789, 794-95 (Pa. Super. 2023); **Ungurian v. Beyzman**, 232 A.3d 786, 793 n.10 (Pa. Super. 2020).

("Lahr") and the death of Lahr's newborn baby, Annalise Medina-Diaz ("Medina-Diaz"). We affirm and direct Lahr's counsel to file a certification consistent with this decision.[3]

We summarize the background to this appeal from the allegations in Lahr's first amended complaint. **See** First Amended Complaint, 4/5/21, at 2-8. Group provided Lahr with prenatal care when she was pregnant with Medina-Diaz. In August 2019, around the time of Lahr's expected due date, she experienced symptoms, including cramping, bloody vaginal discharge, and

_____

[3] We note that the trial court reviewed the three patient safety reports *in camera* and directed them to be sealed. After Appellants took this appeal and requested a stay of the trial court's order compelling production of the patient safety report, this Court **twice** ordered that the reports "shall **not** be made part of the record in the trial court at this time." Order, 11/23/22 at 1 (emphasis added); Order 12/13/22, at 1 (emphasis added). The trial court subsequently and inexplicably electronically transmitted to this Court the certified record which included copies of the contested reports as an unsealed exhibit. The exhibit, therefore, was accessible to all counsel via this Court's PACMS system under the file name "Exhibit-10." While this Court took steps to limit all counsels' access to the exhibit upon discovery of this issue, it appears that counsel for the parties, including Lahr's counsel, already accessed the carelessly unsealed exhibit from this Court's electronic records system in December 2022.

While we decline at this juncture to find this appeal moot based on the trial court's violation of this Court's prior directives, **see In re 2014 Allegheny County Investigating Grand Jury**, 173 A.3d 653, 656 (Pa. 2017) (internal citation omitted), we direct Lahr's counsel to immediately destroy any copies of "Exhibit-10" or the patient safety reports he obtained. We further order counsel to file in this Court, within five days of this decision, a certification indicating whether he reviewed the contents of "Exhibit-10" or the patient safety reports and whether he has disseminated the patient safety reports or any of the information contained therein. Additionally, Lahr's counsel shall verify in the certification that he has destroyed any and all copies of "Exhibit-10" that he obtained or produced.

- 2 -

fever, which she reported to on-call providers at Group. The on-call providers advised Lahr to take Tylenol and visit Group's office. On August 13, 2019, Lahr instead went to LVH-Muhlenberg, where she was admitted for the induction of labor. Dr. Young and Dr. Peters, who were affiliated with Group and LVH, were Lahr's attending obstetricians-gynecologists ("OB-GYNs"). Lahr gave birth to Medina-Diaz in the early morning hours of August 14, 2019. Medina-Diaz was in critical condition and transferred to LVH-Cedar Crest. Later that evening, Medina-Diaz died of complications related to infections. There is no dispute that between August 14 and 15, 2019, LVH's healthcare workers used LVH's electronic reporting system to create the three patient safety reports concerning Lahr and/or Medina-Diaz that are the subject of this appeal.

Lahr, individually and as executrix of Medina-Diaz's estate, commenced the underlying civil action asserting medical malpractice and related claims against Appellants. The trial court summarized the procedural history and its findings of fact relevant to the discovery dispute over the patient safety reports as follows:

> On December 16, 2021, [Lahr] moved to compel [Appellants] to produce "patient safety reports" regarding . . . Lahr and/or . . . Medina-Diaz. [Appellants] asserted that the patient safety reports are immune from discovery under the Medical Care Availability and Reduction of Error ("MCARE") Act,

> 40 P.S. §§ 1303.101-1303.910, and/or the Peer Review Protection Act ("PRPA"), 63 P.S. §§ 425.1-425.4.[4]
>
> The [c]ourt heard oral argument regarding [Lahr's] motion . . . [and] entered an [o]rder . . . directing [Appellants] to provide the [c]ourt with the patient safety reports for an *in-camera* review, and scheduling an evidentiary hearing. The [c]ourt reviewed the reports *in camera* and held an evidentiary hearing . . ..
>
> At the hearing held on March 31, 2022, [the court] heard testimony from Gwenis L. Browning ["(Browning")], Administrator of Patient Safety/Patient Safety Officer and Director of Patient Safety/Patient Safety Officer; Kay Ann Young, Director of the Department of OB-GYN Quality Assurance and Performance Improvement; and Carolyn Coleman, Administrator for Risk Management. . . .
>
> In accordance with [MCARE], [LVH] adopted a patient safety plan. The patient safety plan encourages healthcare workers to report events that they witness or participate in at LVH[] medical facilities. In order to implement the patient safety plan, LVH[] adopted a patient safety reporting policy, which provides "a standardized mechanism for identifying, reporting, investigating, trending and resolving incidents."
>
> A healthcare worker may report a "patient safety event" by submitting a "patient safety report" to the patient safety office. A healthcare worker may electronically file a patient safety report, call the hotline, complete a hard copy form, call the patient safety office, or use the internal texting system. The healthcare worker making the report may remain anonymous if he or she chooses to do so.
>
> The patient safety officer oversees the patient safety plan and patient safety reporting policy. After reviewing a patient safety report, the patient safety officer determines whether to conduct an investigation, which may include reviewing relevant

---

[4] At various points during the litigation of this discovery dispute, Appellants and Lahr argued the applicability of privileges under MCARE section 311(a), entitled "Prepared materials," and 311(d), entitled "Received materials," 40 P.S. § 1303.311(a), (d), as well as PRPA section 425.4, entitled "Confidentiality of review organization's records." ***See*** 63 P.S. § 425.4.

medical records, conducting a root cause analysis, and reaching out to the patient and other individuals involved in the event. At the conclusion of an investigation, the patient safety officer determines whether the event must be reported to the Pennsylvania Patient Safety Authority [(also referred to herein as "the PPSA" or "the authority")].

\* \* \* \*

There are three patient safety reports involving [Lahr and/or Medina-Diaz]. The patient safety office investigated the events described in the patient safety reports and, during the course of this investigation, the patient safety officer led a group, consisting of frontline staff and leadership personnel, that conducted a root cause analysis.[5] At the conclusion of its investigation, the patient safety office classified two of the three reports as "incidents" and one event report as a "non-event," and in accordance with the provided taxonomy, reported the two events classified as "incidents" to the Pennsylvania Patient Safety Authority.

Ms. Young received the three patient safety reports in electronic form and, upon evaluation, determined that the events described in these reports should be subject to peer review. Although Ms. Young typically uploads summaries of patient safety reports into the electronic peer review file, she does not know whether she uploaded summaries of the patient safety reports regarding [Lahr and/or Medina-Diaz] into the electronic peer review file. On September 6, 2019, the Obstetrics Peer Review Committee engaged in peer review by reviewing the electronic peer review data.

Trial Court Opinion, 12/28/22, at 1-4 (some dates, capitalization and footnote omitted; italics added).

_____

[5] It is unclear whether Browning participated in the investigation, and it appears another patient safety officer, who did not testify at the hearing, conducted the root cause analysis. **See** N.T., 3/31/22, at 44. Browning testified that the patient safety reports and addendums based on the root cause analysis are kept in one file or "repository" maintained by the patient safety office. **Id**. at 33.

In June 2022, the trial court granted Lahr's motion to compel production of the patient safety reports. The court found, *inter alia*, the MCARE and PRPA confidentiality provisions did not apply because the reports contained information otherwise available from an original source, such as a medical record.[6] *See* Order; 6/21/22, at 1; Memorandum Opinion, 6/21/22, at 11-12, 16.[7] Appellants filed a motion for reconsideration ("first reconsideration motion") of the trial court's decision under MCARE. At oral arguments on the first reconsideration motion, Appellants conceded that they produced no evidence that a patient safety committee reviewed the patient safety reports. *See* N.T., 9/19/22, at 7. Appellants, however, asserted section 311(a) should apply and the trial court erred in its application of the original source provision. *See id*. at 11-14. The court thereafter concluded that it had properly denied Appellants' claim of an MCARE privilege but had done so for the wrong reason. *See* Memorandum Opinion, 10/3/22, at 8. The court, citing **Venosh v. Henzes**, 31 Pa. D. & C. 5th 411, 2013 WL 9593953 (Lackawanna Cty. 2013),

_____

[6] Specifically, the trial court entered three orders in June 2022: a June 17, 2022 order and memorandum opinion compelling disclosure of the patient safety reports; a June 21, 2022 order vacating the June 17, 2022 order; and a June 21, 2022 order and memorandum opinion compelling disclosure of the patient safety reports with amended language directing the sealing of the patient safety reports. We refer to the June 21, 2022 order compelling disclosure as the "June 2022 order."

[7] The trial court also concluded that PRPA's evidentiary protections did not apply because Appellants failed to establish a peer review committee reviewed the information in the patient safety reports. **See** Memorandum Opinion, 6/21/22, at 11.

*aff'd*, 105 A.3d 788 (Pa. Super. 2014) (unpublished memorandum), reasoned that section 311(a) did not apply because a patient safety committee did not review the patient safety reports. *See id*. at 5-8.[8]

On October 3, 2022, the court vacated its June 2022 order[9] and issued a new order and a memorandum opinion requiring disclosure of the patient safety reports. *See* Order, 10/3/22, at 1; Memorandum Opinion, 10/3/22, at 1-8. Appellants filed a motion for reconsideration ("second reconsideration motion") and timely appealed the October 3, 2022 order. Appellants and the court have complied with Pa.R.A.P. 1925.[10]

---

[8] In **Venosh**, the court of common pleas discerned three elements to a claim of privilege under section 311(a): (1) the document was "solely prepared or created for the purpose of compliance with" MCARE; (2) the document "arise[s] out of matters reviewed by the patient safety committee . . . or the governing board" pursuant to section 310(b); and (3) the document is not otherwise available "from original sources." **Venosh**, 2013 WL 9593953, at *10. The court further reasoned that section 311(a) did not apply "if the investigation of an incident by the defendant hospital was not commenced at the request of or by the defendant's Patient Safety Committee" or if a patient safety committee, or the hospital's governing board, did not review a document. **Id**. (internal citations and quotations omitted). It is well settled that the decision of a court of common pleas does not bind this Court, but we may consider the reasoning as persuasive. **See Darrow v. PPL Elec. Utilities Corp.**, 266 A.3d 1105, 1112 n.6 (Pa. Super. 2021).

[9] Because the June 2022 order was not a final order, the court retained jurisdiction to vacate it more than thirty days after its entry. **See** 42 Pa.C.S.A. § 5505; **see also Mente Chevrolet, Oldsmobile, Inc. v. Swoyer**, 710 A.2d 632, 633 (Pa. Super. 1998) (noting that "the thirty-day time limit for reconsideration imposed by 42 Pa.C.S.A. § 5505 applies only to final orders").

[10] In its Rule 1925(a) opinion, the trial court suggested Appellants withdrew their claim under PRPA and waived their claims under MCARE section 311(d). Trial Court Opinion, 12/28/22, at 5 n.2, 11 n.5. However, the court elected to discuss section 311(d) in its Rule 1925(a) opinion. **See id**. at 11.

Appellants raise the following issues for our review:

1. Whether the trial court committed an error of law and/or abused its discretion in requiring a hospital to produce patient safety reports: (i) prepared in accordance with the requirements of [MCARE], with the specific intention that they would remain confidential and protected from disclosure in a civil proceeding, (ii) in circumstances where the information contained therein is the same information the hospital conveyed to the Pennsylvania Patient Safety Authority which MCARE section 311(d) separately protects?

2. Whether the trial court erred and/or abused its discretion by failing to find that section 311(d) of the MCARE Act—which protects information provided to, as well as information disseminated from, the Pennsylvania Patient Safety Authority . . . —protected a hospital's patient safety reports from discovery where the undisputed evidence established that the reports in question were sent to the [a]uthority pursuant to section 311(d) of the Act?

3. Whether the trial court erred and/or abused its discretion by failing to find that a hospital's patient safety reports were protected from discovery under [PRPA], in circumstances where the undisputed evidence established that the documents were "sent to and reviewed by" a peer review committee, and, thus, fell within the purview of the statute, and where [Appellants]—who properly raised and preserved the peer review privilege in their response to [Lahr's] motion to compel—did not waive the issue?

Appellants' Brief at 7-8 (some capitalization and emphasis omitted).

This appeal implicates the trial court's discovery order rejecting Appellants' claims of statutory privileges. Our standard of review is as follows:

In reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will.

*Carlino E. Brandywine, L.P. v. Brandywine Village Associates*, 260 A.3d 179, 195-96 (Pa. Super. 2021) (internal citations, quotations, and brackets omitted) ("*Carlino*"). When a claim of privilege requires consideration of a question of law, such as the interpretation of a statute, our standard of review is *de novo*, and the scope of our review is plenary. *See Ungurian*, 232 A.3d at 794.

Pennsylvania law imposes a shifting burden of proof in disputes involving the disclosure of allegedly privileged materials. The party asserting a privilege must initially produce facts to properly invoke the privilege; once the privilege is properly invoked, the party seeking disclosure bears the burden of showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies. *See Carlino*, 260 A.3d at 197. If the party asserting the privilege produces insufficient facts to invoke the privilege, then the burden never shifts to the party seeking disclosure. *See id*.

In their first issue, Appellants assert error in the trial court's interpretation and application of MCARE section 311(a). Before addressing this issue, it is helpful to provide the background to the evidentiary protections in MCARE section 311.

MCARE Chapter 3, entitled "Patient Safety" ("Chapter 3"), "relates to the reduction of medical errors for the purpose of ensuring patient safety." 40 P.S. § 1303.301. Chapter 3 establishes the PPSA as an independent agency which, along with the Pennsylvania Department of Health (or "the

department"), receives reports, collects data, and makes recommendations to a hospital. *See id*. §§ 1303.303, 1303.304(a)(5)-(7), 1303.306(a)(2)-(3).

Chapter 3 requires medical facilities to develop, implement, and comply with, a patient safety plan, *see id*. § 1303.307, and establish internal reporting systems for healthcare workers to report "incidents" and "serious events." *See id*. §§ 1303.307(b)(3), 1303.308(a).[11] Healthcare workers who reasonably believe an incident or serious event occurred must make a report, pursuant to the procedures in the patient safety plan, no later than twenty-four hours after the occurrence or the discovery of the occurrence. *See id*. § 1303.308(a).

A hospital's patient safety plan must also designate a patient safety officer and establish a patient safety committee. *See id*. § 1303.307(b)(1)-(2). A patient safety officer must: serve on the patient safety committee; ensure the investigation of all reports of incidents and serious events; take action as is immediately necessary to ensure patient safety as a result of any investigation; and report to the patient safety committee any action taken to promote patient safety as a result of the investigation. *See id*. § 1303.309(1)-(4).

_____

[11] Chapter 3 defines an "incident" as "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility which could have injured the patient but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient[,]" and a "serious event" as "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility that results in death or compromises patient safety and results in an unanticipated injury requiring the delivery of additional health care services to the patient." 40 P.S. § 1303.302.

Section 310(b) requires a patient safety committee to:

(1) receive reports from the patient safety officer.

(2) evaluate the patient safety officer's investigations and actions on all reports.

(3) review and evaluate the quality of patient safety measures utilized by the medical facility, which must include consideration of reports made under sections 304(a)(5) and (b), 307(b)(3) and 308(a).

(4) make recommendations to eliminate future serious events and incidents.

(5) give quarterly reports to the administrative officer and governing body of the medical facility about the number of serious events and incidents and the committee's recommendations to eliminate future serious events and incidents.

*Id*. § 1303.310(b).  Additionally, a hospital must report incidents to the PPSA.

*See id*. § 1303.313(b).

When establishing these reporting requirements, the General Assembly created a corresponding "confidentiality and compliance" section in MCARE, which, in relevant part, protects documents prepared for the purpose of compliance with MCARE, prohibits testimony on certain matters by members and participants of meetings of the patient safety committee or the governing board of a medical facility, and protects materials received by the PPSA.  *See id*. § 1303.311(a), (b), (d).

Appellants' first issue requires consideration of the following provisions of section 311:

**(a) Prepared materials.--**Any documents, materials or information solely prepared or created for the purpose of compliance with section 310(b) or of reporting under section

304(a)(5) or (b), 306(a)(2) or (3), 307(b)(3), 308(a), 309(4), 310(b)(5) or 313 which arise out of matters reviewed by the patient safety committee pursuant to section 310(b) or the governing board of a medical facility pursuant to section 310(b) are confidential and shall not be discoverable or admissible as evidence in any civil or administrative action or proceeding. Any documents, materials, records or information that would otherwise be available from original sources shall not be construed as immune from discovery or use in any civil or administrative action or proceeding merely because they were presented to the patient safety committee or governing board of a medical facility.

* * * *

**(c) Applicability.--**The confidentiality protections set forth in subsections (a) and (b)[12] shall only apply to the documents, materials or information prepared or created pursuant to the responsibilities of the patient safety committee or governing board of a medical facility set forth in section 310(b).

40 P.S. § 1303.311(a), (c) (footnote omitted).

Appellants argue LVH implemented a patient safety plan pursuant to

section 307 and a reporting system required by section 307(b)(3). They claim

LVH's healthcare workers solely prepared or created the contested patient

---

[12] Subsection (b) states:

No person who performs responsibilities for or participates in meetings of the patient safety committee or governing board of a medical facility pursuant to section 310(b) shall be allowed to testify as to any matters within the knowledge gained by the person's responsibilities or participation on the patient safety committee or governing board of a medical facility, provided, however, the person shall be allowed to testify as to any matters within the person's knowledge which was gained outside of the person's responsibilities or participation on the patient safety committee or governing board of a medical facility pursuant to section 310(b).

40 P.S. § 1303.311(b).

safety reports for the purpose of compliance with section 308(a), and LVH reported the two events deemed incidents to the PPSA as required by section 313. Appellants assert the evidentiary protections in section 311(a) should apply to all three patient reports based on LVH's and its healthcare workers' compliance with the reporting requirements of Chapter 3.

Appellants further contend the trial court erred in its interpretation and application of section 311(a) by requiring an actual review of the patient safety reports by a patient safety committee. Section 311(a), they argue, does not state that a document must be "actually reviewed" but requires only that a document "arise out of matters reviewed" by a patient safety committee. Appellants posit the "arise out of matters reviewed" requirement extends section 311(a)'s protection to types of documents typically reviewed by a patient safety committee. Appellants insist the trial court impermissibly altered the plain meaning of section 311(a) and erred in relying on **Venosh** to find an "actual review" requirement. Further, Appellants argue the creation of an "actual review" requirement in section 311(a), would undermine the purposes of MCARE to encourage healthcare workers and hospitals to report incidents and serious events.

The trial court initially agreed with Appellants that the contested patient safety reports were solely created or prepared for the purposes of complying with MCARE. **See** Trial Court Opinion, 12/28/22, at 8. However, the court determined Appellants failed to present any evidence that a patient safety committee reviewed the reports. **See id**. at 9. The court, citing **Venosh**,

thus concluded Appellants failed to establish a privilege under section 311(a). The court rejected Appellants' claim that section 311(a) did not require a patient safety committee to actually review a document as inconsistent with the plain language of section 311(a). *See id*. at 5-9.[13]

Following our review, we conclude that neither the trial court nor Appellants offer an interpretation of section 311(a)'s "review" requirement consistent with statute. In so concluding, we are mindful that the object of statutory interpretation is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statutory provisions under review. *See* 1 Pa.C.S.A. § 1921(a). A statute's plain language is the best indication of legislative intent. *See* 1 Pa.C.S.A. § 1921(b). Furthermore, we note that evidentiary privileges are disfavored because they operate in derogation of the search for truth. *See Reginelli v. Boggs*, 181 A.3d 293, 300 (Pa. 2018). However, a statutory privilege reflects the General Assembly's public policy determinations concerning the need for an evidentiary protection. *See id*. Thus, a court may not abrogate a statutory protection unless a clear basis for doing so exists in a statute, the common law, or constitutional principles. *See id*.

_____

[13] Lahr agrees with the trial court's interpretation of section 311(a) as requiring an actual review of the patient safety report. However, Lahr asserts that Appellants failed to establish the healthcare workers solely prepared or created the patient safety reports for the purpose of compliance with MCARE. She also contends that MCARE section 311(a)'s original source provision defeated Appellants' claim that the patient safety reports were confidential and could not be discovered.

The relevant phrase at issue in this appeal is section 311(a)'s protections of "documents, materials or information solely prepared or created for the purpose of . . . reporting under [section 308(a)] which arise out of matters reviewed by the patient safety committee pursuant to section 310(b) or the governing board of a medical facility pursuant to section 310(b) . . . ." 40 P.S. § 1303.311(a).

We initially discern no basis to disturb the trial court's conclusion that the three contested patient safety reports were documents solely prepared or created for the purpose of compliance with reporting under section 308(a). *See* Trial Court Opinion, 12/28/22, at 8. LVH presented evidence that it implemented a patient safety plan as required by section 307, and the patient safety plan established a system for internal reports as required by sections 307(b) and 308(a). *See* N.T., 3/31/22, at 12, 15; LVH Exhibits 2 (patient safety plan) and 3 (reporting policy).[14] A review of the contested patient safety reports supports the court's finding that the reporting healthcare workers utilized the system to prepare or create the patient safety reports pursuant to section 308(a)'s requirements to report occurrences they reasonably believed were incidents or serious events. *See* Trial Court Opinion, 12/28/22, at 8. Moreover, we note that LVH reported two incidents to the PPSA upon the determination that two of the three patient safety reports constituted incidents under MCARE. *See* 40 P.S. § 1303.313(b). Thus, we

---

[14] LVH referred to its patient safety committee as a "patient safety council." *See* LVH Exhibit 2.

- 15 -

agree with the trial court that Appellants established the three patient safety reports were solely prepared or created for the purpose of reporting under MCARE.

We now turn to the crux of this appeal—the phrase "which arise out of matters reviewed by the patient safety committee . . .." 40 P.S. § 1303.311(a). This phrase limits the scope of section 311(a)'s protections, but the term "matters" is not defined by MCARE. However, the term's plain meaning, and its use in other provisions of section 311, support reading "matters" more broadly than "documents, materials or information."

Dictionary definitions of "matter" or "matters" include "[a] subject of concern, feeling, or actions[,]" *The American Heritage Dictionary of the English Language*, 5th Ed. at 1084 (defining "matters"), and "[t]he situation in question," *Collins English Dictionary* (defining "matters").[15] Other provisions of section 311 prohibit certain witnesses from testifying "as to any **matters** within the knowledge gained by the person's responsibilities or participation on the patient safety committee or governing board of a medical facility[,]" but permit testimony "concerning **matters** within the person's knowledge which was gained outside" of the witness's responsibility or participation in such meetings. 40 P.S. § 1303.311(b) (emphases added). Section 311(e), which applies to current and former employees of the PPSA, the Department of Health, and the Department of State, prohibits testimony

_____

[15] ***See*** https://www.collinsdictionary.com/us/dictionary/english/matters.

"as to any **matters** gained by reason of his or her review of documents, materials, records or information" submitted to the PPSA pursuant to MCARE. *Id*. § 1303.311(e) (emphasis added).

Thus, it appears the General Assembly did not intend "matters" to be interchangeable with "documents, materials, or information." Consistent with the ordinary meanings of "matters" as a broad subject of concern or a situation in question, we conclude the phrase "matters reviewed" in section 311(a) does not require the party claiming a section 311(a) protection to establish a patient safety committee or governing board actually reviewed a contested document. Therefore, we find support for Appellants' argument that the trial court erred in interpreting section 311(a) as requiring an actual review of the patient safety reports by a patient safety committee or a governing board.[16]

However, Appellants' interpretation of the phrase "matters reviewed" to mean documents "typically" considered by a patient safety committee or

_____

[16] Further textual evidence supports holding that section 311(a) does not require an "actual review" of a specific document. Had the General Assembly intended the protections in section 311(a) to attach only when a document was presented to or actually reviewed by a patient safety committee or governing board, it could have stated so expressly, as it did in the original source provision. *See* 40 P.S. § 1303.311(a) (stating "documents . . . that would otherwise be available from original sources shall not be construed as immune from discovery . . . merely because they were **presented to the patient safety committee or governing board of a medical facility**") (emphasis added). Furthermore, requiring a party to prove the "actual review" of a specific document would be inconsistent with section 311(b)'s prohibition of testimony "as to any matters within the knowledge gained by the person's responsibilities or participation on the patient safety committee or governing board of a medical facility." 40 P.S. § 1303.311(b).

governing board requires further consideration. Section 311(a) specifically requires that a protected document arise out of matters reviewed pursuant to their section 310(b) responsibilities. Matters pursuant to section 310(b) include the governing board's duty to receive quarterly reports from the patient safety committee and the patient safety committee's duties to, *inter alia*, receive reports from the patient safety officer, "[e]valuate investigations and actions of the patient safety officer on all reports[,]" and "[r]eview and evaluate the quality of patient safety measures utilized by the medical facility," which must also include consideration of reports under 308(a). 40 P.S. §§ 1303.310(b)(2), (3), (5). Significantly, section 311(c) also states "[t]he confidentiality protections set forth in subsections (a) . . . shall only apply to the documents, materials or information prepared or created pursuant to the responsibilities of the patient safety committee or governing board of a medical facility set forth in section 310(b)." *Id*. § 1303.311(c). Reading section 311(a) and (c)'s requirements together, it is clear the General Assembly intended that a party seeking section 311(a)'s protection demonstrate a document was prepared or created pursuant to a patient safety committee's or governing board's responsibility, *see id*., and the document arose from matters reviewed by the patient safety committee, such as receiving the patient safety officer's report, evaluating the patient safety officer's investigation and actions on all reports, or reviewing and evaluating the quality of a hospital's patient safety measures. *See id*. §§ 1303.310(b), 1303.311(a).

Based on the foregoing, we discern no merit to Appellants' assertion that section 311(a) applies simply because the patient safety reports are the types of documents that typically are reviewed by a patient safety committee or governing board pursuant to section 310(b). The fact that documents are typically reviewed satisfies section 311(c)'s requirement that a document be prepared or created ***pursuant*** to a responsibility of a patient safety committee or governing board, such as the patient safety committee's responsibility to consider section 308(a) reports when reviewing and evaluating a hospital's patient safety measure. ***See id***. §§ 1303.310(b)(3), 1303.311(c). However, the General Assembly required more in section 311(a): the protected document must arise out of ***matters reviewed*** by the patient safety committee or governing board pursuant to section 310(b). To conclude that section 311(a) applies based on the type of document and the intent or purpose to comply with MCARE, would nullify the phrase "matters reviewed" in favor of "matters typically reviewed." Such an interpretation would not only add language to section 311(a) but also conflate section 311(a)'s language concerning a document which arises out of ***matters reviewed*** with section 311(c)'s language concerning a document prepared or created ***pursuant*** to the patient safety committee's or governing board's general responsibilities under section 310(b). This Court cannot read section 311(a) in a manner as to render section 311(c) superfluous, and we conclude that the phrase "matters reviewed" required Appellants to demonstrate more than the fact a

patient safety committee or governing board would typically review the patient safety reports.

With these principles in mind, we turn to the record in this appeal. Appellants conceded that they produced no evidence that the patient safety committee reviewed the patient safety reports. *See* N.T., 9/19/22, at 7. While we have concluded that Appellants were not required to prove an actual review of the patient safety reports by the patient safety committee, the record further reveals Appellants provided no evidence that the patient safety reports arose out of any matters reviewed by the patient safety committee or the governing board pursuant to section 310(b). There was no evidence that patient safety committee received a patient safety officer's report, evaluated the patient safety officer's investigation and actions, or reviewed or evaluated the quality of LVH's patient safety measures upon a consideration the patient safety reports. *See* 40 P.S. § 1303.310(b)(1)-(3). Browning, the Administrator of Patient Safety/Patient Safety Officer and Director of Patient Safety/Patient Safety Officer, testified the patient safety officer took no further actions after the matter was referred to peer review and two incident reports were filed with the PPSA. *See* N.T., 3/31/22, at 35. Appellants provided no evidence that the patient safety committee even received or accessed the patient safety reports, a patient safety file, or a report from the patient safety

officer.[17]  Similarly, there was no evidence that the patient safety committee prepared a report for the governing board or any actions taken by the governing board.  Simply put, Appellants provided no evidence of any activity by the patient safety committee or the governing board on any matters pursuant to section 310(b) from which the patient safety reports arose.

In sum, based on our interpretation of section 311(a) and the record in this appeal, we hold that a party claiming a document is protected under section 311(a) need not demonstrate a patient safety committee or governing board actually reviewed the contested document.  At a minimum, however, section 311(a) requires proof that the document, materials or information or reporting requirement arose out of "matters reviewed" by a patient safety committee or a governing board pursuant to their section 311(b) responsibilities.[18]  Here, in the absence of any evidence that the patient safety

---

[17] We note Appellants also argue that the patient safety officer or office functioned as the patient safety committee.  This argument is frivolous and ignores MCARE requirements, and their own patient safety plan and policy, delineating the functions of a patient safety officer and a patient safety committee or council.

[18] Unlike an "actual review" standard, LVH could have proved their section 311(a) claim without the need for testimony from witnesses as to matters learned while discharging their responsibilities as a member of a patient safety committee or a governing board or by their participation in such meetings.  *See* 40 P.S. § 1303.311(b).  For example, an "audit trail" of relevant documents could have demonstrated that the patient safety committee or governing board received or accessed the patient safety reports, a related patient safety file, a related patient safety officer's report, or a patient safety committees' report.  *See* N.T., 3/31/22, at 26-30, 33.

committee or governing board incorporated the three patient safety reports when discharging their statutory responsibilities under section 310(b), we conclude Appellants failed to meet their threshold burden of establishing the evidentiary protection in section 311(a) applied. Accordingly, Appellants' first issue fails.[19]

Before addressing Appellants' remaining two issues concerning MCARE section 311(d) and PRPA, we consider the trial court's suggestion that Appellants failed to preserve these issues for review. The court asserts Appellants only raised their claims for confidentiality under MCARE section 311(d) in a reconsideration motion. *See* Trial Court Opinion, 12/28/22, at 11 n.5. The court also determined that Appellants waived their claim of confidentiality under PRPA because they never objected to its initial June 2022 rulings that the PRPA privilege did not apply. *See id*. at 5 n.2.

Our review of the unusual procedures giving rise to this appeal constrain us to agree with the trial court that Appellants failed to preserve their appellate claims based on MCARE section 311(d) and PRPA. In their initial objections to Lahr's request for discovery of the patient safety reports, Appellants cited MCARE and PRPA generally. *See* Amended Privilege Log of LVH, 3/29/22, at 1-2; Supplemental Response of LVH and Group to Lahr's Motion to Compel, 2/18/22, at 2-9 (discussing MCARE section 311(a) and PRPA). At the hearing

---

[19] It is well settled that this Court is not bound by the rationale of the trial court and may affirm on any basis. *See Southwestern Energy Production Co. v. Forest Resources, LLC*, 83 A.3d 177, 184 (Pa. Super. 2013).

on Lahr's motion to compel, Appellants argued that LVH and its healthcare workers complied with the necessary MCARE procedures for reporting incidents and serious events. Further, Appellants noted that LVH made two incident reports to the PPSA and referred the three patient safety reports to the peer review process. However, Appellants did not cite MCARE section 311(d) or argue section 311(d) as an independent basis to protect the reports sent to PPSA. We acknowledge Drs. Young and Peters briefly mentioned sections 313 and 311(d) in a supplemental brief filed after the hearing, *see* Supplemental Memorandum of Drs. Young and Peters, 5/13/22, at 5. The court, however, entered its June 2022 order rejecting Appellants' MCARE and PRPA claims and compelling production of the patient safety reports without discussing section 311(d).

Appellants thereafter filed their first reconsideration motion, which focused on the trial court's application of MCARE section 311(a), reliance on *Venosh*, and conclusion that the information in the patient safety report was otherwise available from an original source. The first reconsideration motion did not cite or allege error under MCARE section 311(d) or PRPA. At the hearing on the first reconsideration motion, the trial court asked, "[W]e're not concerned with [PRPA] anymore?" to which Appellants' counsel responded "Correct, Your Honor." *See* N.T., 9/19/22, at 7. Again, while Appellants' counsel mentioned that LVH submitted the two incident reports to the PPSA, counsel did not cite or argue section 311(d). The trial court thereafter entered the October 3, 2022 order vacating the June 2022 order and rejecting

Appellants' section 311(a) claim. It was only in the second reconsideration motion, filed from the October 3, 2022 order, that Appellants re-raised a claim that section 311(d) protected at least two of the patient safety reports. The second reconsideration motion did not reassert Appellants' PRPA claim.

We acknowledge there is persuasive authority that the failure to include a claim in **optional** reconsideration motions will not result in waiver of an issue on appeal. **Compare Jackson v. Hendrick**, 764 A.2d 1139, 1142 n.5 (Pa. Cmwlth. 2000); 20 West's Pa. Prac., Appellate Practice § 302:59; **with** Pa.R.Civ.P. 227.1(b)(2) (stating that the failure to state a ground for relief in a **mandatory** post-trial motion will result in waiver). Here, however, Appellants bore the burden of establishing that an MCARE or PRPA protection applied to the three patient safety reports. **See Carlino**, 260 A.3d at 197. Appellants had ample opportunity to claim error based on the trial court's failure to consider MCARE section 311(d) and the court's analysis of PRPA. Their present attempts to revive dormant legal claims without preserving them in the subsequent proceedings on their first reconsideration motion constitutes impermissible piecemeal litigation. **See Meyer-Chatfield Corp. v. Bank Financial Services Group.**, 143 A.3d 930, 938 n.4 (Pa. Super. 2016) (noting that "[r]aising an issue for the first time in a motion for reconsideration . . . does not rescue that issue from waiver"). We cannot condone such conduct and conclude these issues are waived for the purpose of this appeal. **Cf. Commonwealth v. Smith**, --- A.3d ---, 2023 WL 6799100 at *4 (Pa. Super. filed Oct. 16, 2023) (refusing to endorse a procedure that would force a party

to relitigate a suppression motion indefinitely based on serial motions for reconsideration by the opposing party).

Order affirmed. Lahr's counsel to file a certification within five days consistent with this decision.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2023