J-A09020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: SHIRLEY WEINBERG REVOCABLE TRUST DATED JANUARY 27, 2011 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LISA A. ANTIN, BENJAMIN ANTIN, JASON ANTIN, INDIVIDUALLY AND AS TRUSTEES | : : : | No. 88 WDA 2023 |

Appeal from the Order Entered January 10, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 02-19-5237

| | | |
|---|---|---|
| IN RE: SHIRLEY WEINBERG REVOCABLE TRUST DATED JANUARY 27, 2011 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LISA A. ANTIN, BENJAMIN ANTIN, JASON ANTIN, INDIVIDUALLY AND AS TRUSTEES | : : : | No. 89 WDA 2023 |

Appeal from the Order Entered January 13, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 02-19-5237

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: MARCH 27, 2024**

This is a dispute between siblings and cousins over who among them will inherit Shirley Weinberg's wealth. Shirley's Son, Jeffrey Weinberg, and his adult sons, Jeremy, Jonathan, Justin, and Joshua (collectively "the Weinbergs"), filed the instant action to void certain amendments to Shirley's revocable trust. Shirley's Daughter, Lisa Antin, and her adult sons, Jason and Benjamin Antin, who are both attorneys (collectively, "the Antins"), filed these

appeals from two orders. They did this despite a warning from a judge of this Court in a prior frivolous appeal and the orphans' court opinion on the non-appealability of the orders in question. Because both appeals are frivolous, we quash and impose sanctions.

Although the Weinbergs began this litigation in August of 2019, the case is still in the pleadings stage. At this stage of the litigation, we take our facts from the allegations in the Weinbergs' Petition, filed February 22, 2022.[1]

Shirley and her husband, Alvin, lived in Pittsburgh's Squirrel Hill neighborhood for over 40 years. Alvin ran a television-repair business and owned several pieces of real estate. When he died in 2001, Shirley was "in a position of great difficulty [that caused] her to experience depression and to rely heavily upon family for assistance." Amended Petition for Rule to Show Cause Why Trust Amendments Should Not Be Declared . . . and Why a Trustee *Ad Litem* Should Not Be Appointed at 2. Shirley suffered cognitive, emotional, and psychiatric issues; could be easily influenced; and did not "fully appreciate or manage her financial affairs . . . ." ***Id.***

Daughter "latched onto [Shirley] and followed her nearly everywhere she went, becoming the most . . . dominating influence in [Shirley's] life." ***Id.*** at 2. Daughter made no useful contributions to the family's real-estate business.

---

[1] Although the Weinberg Grandsons initially filed that petition alone, Shirley's Son later joined the petition. Thus, we refer to that operable petition as "the Weinberg Petition."

By contrast, Son helped Shirley sort through the properties, most of which Alvin had left in disrepair. Son built the real estate into a successful business, Beacon Holdings. He repaired and remodeled properties, managed the books and tenants, and served as President of Beacon Holdings. In 2008, Shirley said "she desired to leave 51% of Beacon Holdings to [Son] given his enormous contribution to the business, and the fact that the family wealth would not be at the level it was without his effort." *Id.* That announcement enraged Daughter, who physically assaulted Son. *See id.* at 3-4. Daughter's outburst caused tension between Son and Shirley. Son then resigned from Beacon Holdings.

Thereafter, the Antins convinced Shirley to fire her legal counsel and hire Cohen & Grigsby, P.C. (now Dentons Cohen & Grigsby, hereinafter "Cohen"). Cohen soon made Ben Antin an associate attorney in its Business Practice Group. Ben and Cohen "provided [Shirley] with legal services, including estate-planning services, in or about 2011, and continuing onward through 2018." *Id.* at 4. When Ben left Cohen to become general counsel at one of Cohen's corporate clients, Cohen immediately hired Ben's brother, Jason Antin.

Ben's new position and influence "created an insurmountable conflict of interest, such that [Cohen's] attorneys handling [Shirley's] estate plan . . . should have referred [Shirley] to alternative counsel . . . ." *Id.* at 5. However, Cohen "continued providing [Shirley] with estate-planning services at regular intervals, including producing documents that purport to take the benefit of

[her] estate . . . worth approximately $15,000,000, away from the [Weinbergs], and instead give the entire estate to" the Antins. *Id.*

Shirley and the Weinberg Grandsons had very good relationships "based upon mutual love, caring, respect, trust, and service to one another." *Id.* at 6. They visited and vacationed with Shirley regularly.

Even so, on March 24, 2016, Shirley "signed a document prepared by . . . Cohen, which completely cut [the Weinbergs] out of [the] trust estate," leaving an estimated $15,000,000 trust estate solely to the [Antins] . . . (the 'Third Amendment') . . . ." *Id.* at 8. This Third Amendment was "in contravention of a decades-long estate plan that treated both families equally," while Shirley's relationship with the Weinberg Grandsons remained positive. *Id.* at 8-9. In 2017, she asked Jonathan Weinberg to work for her at Beacon Holdings. Shirley also paid for him and his wife to remodel and move into a home near her residence in Squirrel Hill.

On December 12, 2018, Jonathan drove Shirley to see her lawyer at Cohen to sign documents that would leave that home to him. "Instead, the document that was placed before her to sign was a purported Fourth Amended Trust Agreement, which . . . again cut out the Weinbergs from any benefit in [Shirley's] trust estate (the 'Fourth Amendment')." *Id.* at 12.

Shortly thereafter, Shirley's health declined, and she entered the hospital. On February 16, 2019, Jonathan and his wife stayed with her there. On her death bed, Shirley still believed her estate would benefit the Weinberg Grandsons, stating: "wait until you see how I have this all set up for you" and

"you will always be taken care of." *Id.* The following evening, February 17, 2019, Shirley passed away.

The next day, Ben Antin, as an executor to Shirley's Estate, changed the locks at Beacon Holdings but did not give Jonathan Weinberg a key. Within two weeks, the Antin Grandsons submitted Shirley's will to probate and began to administer her estate. The will transferred all of Shirley's wealth into the at-issue trust. A month later, the Antins evicted Jonathan and his wife from the Squirrel Hill home where they were living.

On August 19, 2019, Son petitioned the orphans' court to compel the Antins to produce and to record the trust documents. The Antins filed preliminary objections. Then, on September 24, 2019, the Antins started transferring millions of dollars' worth of real estate to Daughter. They also began extracting more than $1,000,000 to the Antin Family Trust. *See id.* at 14.

Eventually, in May 2021, the orphans' court overruled the preliminary objections to the petition to compel production. A month later, the Antins "disclosed the trust documents." *Id.* In September 2021, the orphans' court dismissed Son's petition to compel production as moot.

On December 28, 2021, the Weinberg Grandsons filed the Weinberg Petition to have the Third and Fourth Amendments to Shirley's trust declared void. They alleged undue influence and fraud. The Weinberg Grandsons also sought to remove the Antin Grandsons as Trustees and requested monthly accountings of the trust.

The Antins filed preliminary objections, and the Weinberg Grandsons' operable, amended petition followed. The Antins renewed their preliminary objections raising issues of fact. They contended the Weinberg Grandsons lacked standing and that the orphans' court lacked subject-matter jurisdiction, because the petition was untimely. They also contended the petition failed to state a basis on which relief could be granted. The orphans' court issued an order allowing for two months of discovery on the preliminary objections. On May 23, 2022, Attorney Daniel A. Sibel, Esq., who was representing the Weinberg Grandsons, entered his appearance on behalf of Son.

Three days later, the Antins, who never filed an answer to the Weinberg Petition, moved for judgment on the pleadings. They also moved to disqualify Attorney Sibel from representing Son, based on an alleged conflict of interest. Several months later, on August 8, 2022, the orphans' court denied the motion to disqualify Attorney Sibel. The Antins appealed that disqualification order to this Court ("First Appeal"). At that point, the orphans' court still had not ruled on the Antins' preliminary objections or their motion for judgment on the pleadings.

The orphans' court issued a comprehensive, scholarly Rule 1925(a) Opinion, complete with 32 footnotes, on the history of appellate jurisdiction in both the federal and Pennsylvania courts. It explained to the Antins that the disqualification order was neither a final order nor an order from which an interlocutory appeal would lie. *See* Orphans' Court Opinion, 1/11/23, at 2-5.

The bulk of its analysis then focused on the collateral-order doctrine. The court traced its origins, adoption into Pennsylvania law, subsequent evolution, and codification into our Rules of Appellate Procedure. Beginning with **Cohen v. Beneficial Industrial Loan Corp.**, 337 U.S. 541 (1949), the orphans' court reviewed all the major decisions, through the most recent collateral-order opinions of the Supreme Court of Pennsylvania, this Court, and the Commonwealth Court. *See id.* at 5-37. In particular, the court observed that some, but not all, orders disposing of motions to disqualify counsel are immediately appealable. It ultimately found that denying the Antin's motion to disqualify Attorney Sibel did not satisfy the collateral-order doctrine. *See id.* at 37-41. The orphans' court therefore concluded that this Court should quash the Antins' 2022 appeal.

The orphan's court then proceeded with the case, because it retained its original jurisdiction. Of relevance here, on August 30, 2022, by new counsel, Son petitioned the orphans' court to join the Weinberg Petition to void the trust amendments. Son sought the same relief as his children.

Again, the Antins filed preliminary objections to Son's petition by renewing their arguments (standing, subject-matter jurisdiction, demurrer) from the preliminary objections against the Weinberg Petition. Two months later, despite still never filing an Answer to that petition, the Antins also moved for judgment on the pleadings against Son.

On November 16, 2022, the Antins filed their own motion seeking a protective order regarding the discovery requests Son served on Cohen. The

Antins claimed the discovery requests exceeded the scope of the issues that they had raised in their preliminary objections. The Antins' motion also contained boilerplate language contending the subpoenas would lead to the disclosure of evidence shielded by attorney-client privilege. However, they attached no privilege log or affidavits to their motion to support their claim of privilege.

In early 2023, the orphans' court filed two orders that disposed of most of the motions before it. Taken together, the two orders (1) overruled the preliminary objections to both petitions; (2) denied the motions for judgment on the pleadings; (3) denied the motion for production of electronic information; (4) denied the motion to quash Son's subpoenas to Cohen; and (5) granted Son's petition to join the Weinberg Petition.

A week later, on January 19, 2023, the Antins appealed both orders to this Court, which issued rules to show cause why the appeals should not be quashed. The Antins responded. This Court discharged the show-cause orders and reserved resolution of the issue of appellate jurisdiction to this panel. Thereafter, this Court consolidated the two appeals ("Second Appeal").

On October 11, 2023, the orphans' court issued its Rule 1925(a) Opinion regarding the Second Appeal. It began by referencing the Antins' First Appeal, which was still pending before a separate panel of this Court. The orphans' court said, as with the First Appeal, the orphans' court "fails to see how these rulings can be appealed now and way before the case is over." Orphans' Court Opinion, 10/11/23, at 3. The Antins' response to the rules to show cause from

this Court on the Second Appeal did "not convince [the orphans' court] that jurisdiction has vested with the Superior Court." *Id.* The orphans' court then provided another detailed analysis of appellate jurisdiction, demonstrating that the Second Appeal was interlocutory. *See id.* at 3-17.

Two weeks later, this Court ruled on the Antins' First Appeal. We concluded that the Antins could not appeal the August 8, 2022 order refusing to disqualify Attorney Sibel. "In light of the narrow construction of the collateral-order doctrine," we held that the Antins "failed to establish that each prong of the requisite test is 'clearly present' to warrant immediate review." *In re Shirley Weinberg Revocable Tr. Dated Jan. 27, 2011*, 940 WDA 2022, 2023 WL 7216854, at *4 (Pa. Super. 2023) (nonprecedential). Thus, this Court quashed the Antins' First Appeal.

Judge Mary Jane Bowes wrote separately to admonish the Antins' law firm (Jones, Gregg, Creehan & Gerace, LLP) for frivolously attacking Attorney Sibel and for filing a clearly interlocutory appeal. *See id.* (Bowes, J. concurring). She said their arguments "had no basis in law or fact," and "this case teeters dangerously close to the line beyond which lies the potential for disciplinary action." *Id.* (Bowes, J. concurring at *5). Judge Bowes then warned Jones Gregg "to make wiser decisions as this case progresses in the trial court and the seemingly inevitable future appeals." *Id.*

The orphans' court opinions and Judge Bowes' warning went unheeded. Instead of accepting the reality that an appeal generally lies from final orders and judgments, Jones Gregg continued to prosecute the Second Appeal, which

involves two orders that are obviously not final. They filed their brief on December 22, 2023 and forced the Weinbergs to file an appellee brief on January 1, 2023. The Antins also requested oral argument.

Obviously, the orphans' court asserts that we lack appellate jurisdiction, as do the Weinbergs. *See* Weinbergs' Brief at 1-3, 25-28.

The Antins respond that the appealed-from interlocutory orders are appealable, as of right, under the Rules of the Orphans' Court, because they determined the status of fiduciaries, beneficiaries, and creditors. *See* Antins' Response to Rule to Show Cause at 2. They also contend that the January 9, 2023 order satisfies the collateral-order doctrine, because it denies the Antins' motion to shield certain evidence from discovery based on alleged attorney-client privilege. *See id.*

Regarding their claim that the Second Appeal is an interlocutory appeal, as of right, the Antins cite Pennsylvania Rule of Appellate Procedure 342. That Rule "renders certain orders of the orphans' court immediately appealable including those determining the status of fiduciaries, beneficiaries, or creditors of an estate or trust . . . ." *In re Est. of Tito*, 150 A.3d 464, 467 (Pa. Super. 2016) (some capitalization omitted). Rule 342(a)(5) provides, "An appeal may be taken as of right from the following orders of the Orphans' Court Division . . . (5) an order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship." Pa.R.A.P. 342(a)(5).

According to the drafters, under Rule 342(a)(5) "an appealable orphans' court order concerning the status of individuals or entities means an order

determining if an individual or entity is a fiduciary, beneficiary, or creditor, such as an order determining if the alleged creditor has a valid claim against the estate." Pa.R.A.P. 342 *Note* (some capitalization omitted). Based on that Note, in ***Tito***, ***supra***, we held that an order that ***granted summary judgment*** on only some of the claims pending before an orphans' court was immediately appealable. Specifically, the orphans' court ruled a spouse's election against the will was time-barred and that her claims for return of property were improperly asserted, but the order did not resolve the estate's counterclaims.

Nonetheless, this Court had appellate jurisdiction over the order granting partial summary judgment. We explained that, by imposing the time-bar, the orphans' court had determined the spouse was "neither a creditor of the estate, as she asserted in her eleven claims, nor a beneficiary, as she asserted in her election against the decedent's will." ***Id.***, 150 A.3d at 468. Thus, the interlocutory order was made appealable, as of right, under Rule 342(a)(5).

Here, by contrast, the Antins offer no proof as to how the appealed from orders satisfy Rule 342(a)(5). Their argument concerning the appealability of the overruling of their preliminary objections and denial of their motions for judgment on the pleadings as premature is one sentence. They say, "the January 10 Order is immediately appealable pursuant to Pa. R.A.P. 342(a)(5) because the order, which grants [Son] standing to join the Weinberg Grandsons' attack of Shirley Weinberg's trust, determines 'the status of

- 11 -

fiduciaries, beneficiaries and creditors' of the trust at issue." Antins' Response to Rule to Show Cause at 2. As we explain, that sentence is *non sequitur*.

Like their First Appeal, the Antins again "parrot the language" of the Rule with no explanation regarding how Son's status as a party to this litigation automatically renders him a fiduciary, beneficiary, or creditor of the trust. ***Weinberg Revocable Tr.***, 2023 WL 7216854, at *3. The Antins do not attempt to bridge that illogical gap, and no connection can be made. As the orphans' court observed in its 1925(a) Opinion, the order only determined Son's status ***as a party***. It did not determine whether he is a fiduciary, beneficiary, or creditor of the trust. Merely being a party to this case does not make one a fiduciary, beneficiary, or creditor of Shirley's trust. Indeed, whether the Weinbergs are beneficiaries of the trust is the ultimate issue that the orphans' court will resolve after a trial on the Weinbergs' claims of fraud and undue influence.

Needless to say, the orphans' court did not resolve the Weinbergs' ultimate claims by overruling preliminary objections and dismissing motions for judgment on the pleadings as premature. Any reliance by the Antins upon Rule 342(a)(5) to appeal either of the orders is frivolous. There is simply no basis in fact or law by which the Antins can seriously make such a contention. The orders are clearly not appealable under this Rule.

Additionally, the Antins attempt to justify their Second Appeal under the collateral-order doctrine. They claim "the January 13 Order . . . is immediately appealable as a collateral order, because the discovery sought by the

- 12 -

Weinbergs to which the orphans' court refers in the January 13 Order involves the production of documents and information which are protected by the attorney-client and attorney-work-product privileges." Antins' Response to Rule to Show Cause at 4. However, the Antins do not apply the three-pronged test for collateral orders to the issues that they actually raised in their brief to support their assertion of appellate jurisdiction.

None of the issues in the Antins' appellate brief explicitly challenge the production of privileged information.[2] In fact, the Antins only mention

_____

[2] The issues that the Antins raise on appeal are as follows:

1. Did the orphans' court err as a matter of law in dismissing the Antins' preliminary objections raising the issues of fact to the Weinberg Grandsons' standing and [Son's] standing without allowing the full scope of discovery and without affording the Antins the hearing and other due process on the issues raised in the preliminary objections?

2. Did the orphans' court abuse its discretion and err as a matter of law in preventing the Antins from being allowed to engage in discovery related to their preliminary objections challenging the standing of the Weinberg Grandsons and [Son], while simultaneously allowing [Son] to engage in merits discovery before he had even been determined to be a party?

3. Did the orphans' court's denial of both of the Antins' motions for judgment on the pleadings improperly hold that [Son] and the Weinberg Grandsons had standing to challenge [Shirley's] testamentary plan?

4. Did the orphans' court err as a matter of law when it held that [Son's] act of filing a petition to join the Weinberg Grandsons' challenge to [Shirley's] estate plan made him a

*(Footnote Continued Next Page)*

"privilege" once, at the end of the second section of their argument. **See** Antins' Brief at 38-39. The Antins' Statement of Questions Involved includes no direct challenge based on privilege. Also, they do not cite any substantive law to support their one-paragraph mention of privilege. Thus, the Antins have waived any claim that the orphans' court abused its discretion by permitting the disclosure of privileged information is waived. **See** Pa.R.A.P. 2116(a), 2119(a). As such, the issue of privilege is not properly before us.

Our appellate jurisdiction does not vest under the collateral-order doctrine based solely on the tangential mention of attorney-client privilege, where, as here, the party asserting jurisdiction has neither raised nor developed a claim of error based upon that privilege. Accordingly, the Antins may not lift up the issues they wish to litigate in this Court by the bootstraps of a privilege claim that they did not argue here or properly develop below.

Regarding the Antins' failure to make a *prima facie* showing of attorney-client privilege in the orphans' court, as the learned Judge Joseph K. Williams, III, writing for the Court of Common Pleas of Allegheny County, thoroughly and correctly opined could only establish a right of immediate appeal if the

---

party to the proceeding with standing to challenge that plan?

Antins' Brief at 8.

order was collateral.[3] The orphans' court observed that the Antins' claim of privilege in their motion for a protective order was almost an afterthought. In the motion, the Antins wrote:

> Finally, the subpoenas directed to [Cohen] and Attorney Pfeil would require them to disclose privileged information related to their representation of [Shirley] in crafting an estate plan, at the time of her death, did not provide any beneficial interest for [the Weinbergs].

Antins' Motion for Protective Order at 5.

Based on that cursory reference to privilege, the orphans' court ruled that the Antins had not met their burden of production to invoke attorney-client privilege as a basis for a protective order. It reached that conclusion, because the Antins did not provide a privilege log or any other evidentiary support for their claim. The orphans' court opined as follows:

> Generally speaking, "discovery orders are not final, and are therefore unappealable. However, discovery orders involving privileged material are nevertheless appealable as collateral to the principal action pursuant to Pa.R.A.P. 313." *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1056 (Pa. Super. 2008) (internal citations and quotation marks omitted); *see also*, *Buckman v. Verazin*, 54 A.3d 956, 959 (Pa. Super. 2012) (holding order compelling discovery of confidential non-party medical information satisfied

_____

[3] Under Pa.R.A.P. 313(a), "An appeal may be taken as of right from a collateral order of an administrative agency or lower court." "A collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

the elements of being a collateral order, because "once disclosed, the confidentiality attaching to this information is lost").

A body of law has developed regarding privilege claims during the discovery phase of a case. This is where the Antins stumbled and was the basis for this Court to deny the request for a protective order.

> It is well settled that claims of privilege involve shifting burdens of production. Initially, the party claiming a privilege or protection bears the burden of producing facts to establish the proper invocation of a privilege or protection. If the party opposing disclosure fails to do so, our review will end. If the opposing party properly invokes a privilege or protection, the burden will then shift to the party seeking discovery to establish waiver of the privilege or protection or an exception that would permit disclosure.

***Carlino East Brandywine, L.P. v. Brandywine Villages Associates***, 260 A.3d 179, 197 (Pa. Super. 2021).

The Antins opposition to the request for discovery . . . was not accompanied by any privilege log. Its absence did not allow [the orphans' court] to conclude . . . the Antins produced facts to establish the proper invocation of the privilege. As such, the burden to justify their request never shifted to the [Weinbergs]. ***Ford-Bey v. Professional Anesthesia Services of North America, LLC***, 229 A.3d 984,991 (Pa. Super. 2020) ("Absent a sufficient showing of facts to support the privilege, the burden does not shift and the communications are not protected.").

The ***Carlino*** decision elaborates upon this matter.

> A privilege log provides an acceptable format to identify documents, the applicable privilege, and the basis upon which privilege is claimed. While it is true our rules do not *per se* require the production of a privilege log when asserting a privilege . . . [Pa.R.C.P.] 4009.12(b)(2) requires that responses to document requests be in a paragraph-by-paragraph response which ***shall*** identify all documents or things not produced or made available when because of the objection they are not within the scope of permissible discovery. Pa.R.C.P. No. 4009.12(b)(2). The rule

- 16 -

> further provides that documents or things not produced shall be identified with reasonable particularity together with the basis for non-production. ***Id.*** Production of a privilege log is the most practical way to satisfy our rule requirement.

260 A.3d at 197. While the ***Carlino*** decision dealt with a written discovery request (a request for production of documents) and this case involves a different discovery device (a subpoena), the [orphans' court] does not see that difference having any legal significance. The rationale supportive of a privilege log applies regardless of what device is used to secure discoverable material from another person or entity.

Further support for the court's ruling comes, once again, from what is not part of this case. The establishment of "facts" to justify the assertion of privilege "often entails an affidavit, statement, or testimony clarifying the circumstances under which the communication was made." ***Custom Designs & Mfg. Co.* v. *Sherwin-Williams Co.,*** 39 A.3d 372, 379 (Pa. Super. 2012). These supplemental materials or their equivalents are not part of this case. There is one attachment to the Antins' motion for a protective order - a proposed order. Not what a party needs to establish "facts to justify the assertion of privilege."

Orphans' Court Opinion, 10/11/12, at 8-10 (footnotes and some punctation omitted) (emphasis in original). Clearly, the Antins did not raise a legitimate, fact-based claim of attorney-client privilege in the orphans' court. Nor did they raise a legitimate claim of error based on that privilege in this Court.

For all of the foregoing reasons, it is patently clear that any claim by the Antins that they may immediately appeal either of the two orders has no basis in fact or law. We agree with the orphans' court that we do not have appellate jurisdiction over either order. As such, we quash both appeals as premature.

However, this does not end our review. The Weinbergs ask us to impose sanctions upon the Antins and their counsel for making the Weinbergs expend

time and money defending these appeals. **See** Weinbergs' Brief at 47. "Because this appeal is clearly interposed for frivolous reasons and to cause delay, [the Weinbergs] request that this Court award damages to compensate them for the necessity of preparing and arguing this brief." **Id.** at 48.

Rule 2744 dictates as follows:

an appellate court may award as further costs damages as may be just, including:

> (1) a reasonable counsel fee and
>
> (2) damages for delay at the rate of 6% *per annum* in addition to legal interest,

if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate, or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

Under that Rule, we may award counsel fees if an appeal is frivolous, taken solely for delay, or a participant's conduct is dilatory, obdurate, or vexatious. An "appeal is 'frivolous' if the appellate court determines that the appeal lacks any basis in law or in fact." **Gargano v. Terminix Int'l Co., L.P.**, 784 A.2d 188, 195 (Pa. Super. 2001).

As we stated above, both of the Antins' contentions that they could immediately appeal either of the two orders at issue lack any basis in law or fact. The orphans' court made this patently clear in its two 1925(a) Opinions, the first of which was a masterclass on appellate jurisdiction. **See** Orphans' Court Opinion, 1/11/23. A few months later, the orphans' court issued its

- 18 -

second 1925(a) Opinion regarding these appeals. That opinion should have dispelled any notion the Antins and their counsel may have had that either order was immediately appealable.

Even if the Antins retained any doubts as to the soundness of the orphans' court's understanding of appellate jurisdiction, this Court's decision dismissing the First Appeal, filed shortly after the second 1925(a) Opinion, surely allayed those doubts. Moreover, as mentioned above, Judge Bowes wrote a separate concurrence that explicitly warned Jones Gregg it was flirting with a professional conduct violation.

Despite those words of caution, instead of withdrawing their Second Appeal, the Antins and their appellate counsel insisted on pursuing it further. They offered no rational basis in law or fact to make a colorable claim that either order was appealable. Therefore, we conclude the Antins and their counsel persisted in advancing the Second Appeal only to delay resolution of this case before the orphans' court.

Accordingly, we grant the Weinbergs' motion to impose sanctions upon the Antins and Jones Gregg. This Court directs the orphans' court to conduct an evidentiary hearing to determine what reasonable attorney's fees the Weinbergs expended defending these two appeals and enter an appropriate order.

Sanctions imposed against the Antins and Jones Gregg with instructions for the orphans' court to determine the measure of damages under Pa.R.A.P. 2744.

Appeal 88 WDA 2023 quashed. Appeal 89 WDA 2023 quashed.

Case stricken from the argument list.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

FILED: <u>3/27/2024</u>